**UNITED STATES of America**

v.

**William T.C. GASKILL, Appellant.**

**No. 92–5588.**

United States Court of Appeals,
Third Circuit.

Argued March 9, 1993.

Decided April 16, 1993.

Richard Coughlin (argued), Asst. Federal Public Defender, New Jersey, Camden, NJ, for appellant.

Glenn J. Moramarco (argued), Asst. U.S. Atty., Edna B. Axelrod, Asst. U.S. Atty., Michael Chertoff, U.S. Atty., Newark, NJ, for appellee.

Before: BECKER, GREENBERG, and WEIS, Circuit Judges.

## OPINION OF THE COURT

WEIS, Circuit Judge.

Defendant was sentenced to a period of incarceration despite evidence that he was solely responsible for the care of his mentally ill wife. The district court read a Guidelines policy statement as prohibiting consideration of family ties and denied downward departure. We conclude that, in the unusual circumstances presented here, the district court had discretion to depart and, accordingly, we will remand for resentencing.

Defendant pleaded guilty to one count of an indictment charging him with fraudulent use of social security numbers to obtain things of value in violation of 42 U.S.C. § 408. Concluding that it had no choice but to sentence the defendant to the imprisonment term fixed by the United States Sentencing Guidelines, the court imposed a four month period of incarceration, followed by four months in a halfway house or a community treatment center and a period of supervised release.

The defendant was formerly president of a company engaged in the computer field and earned $125,000 annually. At least partially because of his wife's erratic conduct, he resigned from the company. When his assets were exhausted, he ran up debts and his credit rating became quite poor. To evade unfavorable credit reports in connection with job applications, he used the social security number of his son, who was abroad at the time. The defendant also obtained credit cards using social security numbers other than his own. Over a period of four years, he amassed debts in excess of $60,000 to credit card companies, financial institutions, auto dealerships, and retail stores.

At the sentencing hearing, defendant's counsel urged the district court to depart downward from the Guidelines sentence on the basis of extraordinary family circumstances. He referred to the presentence report, to which the government did not take exception, that contains a comprehensive history of the defendant's problems in caring for his mentally ill wife.

The defendant, now 63 years of age, married his wife in 1951. She is a college graduate and in her earlier years had careers as an interior decorator, teacher, and businesswoman. In the 1960's, following the birth of their fourth child, Mrs. Gaskill suffered her first serious mental illness. Over the years, she experienced bouts of depression accompanied by suicide attempts, and was hospitalized in a number of institutions. She displayed erratic and compulsive behavior brought on by her manic depressive condition.

Her attending psychiatrist, Dr. Thomas Houseknechtd, described intellectual deterioration evidenced by a marked decrease in vocabulary and reduced verbal communication. Although well educated, she is now

unable to balance a checkbook or make correct change. She has no personal friends and has no contact with extended family members. All household chores, other than cooking, are performed by the defendant who also must administer her proper medication. She spends sixteen hours a day in bed. In a letter written in September 1992 and included in the record, Dr. Houseknechtd described the medication necessary to control flare-ups of Mrs. Gaskill's condition and her total dependence on the defendant.

At the sentencing hearing, the defendant described how his wife's condition resulted in alienation from their children. They felt their mother was cruel and vindictive and did not understand that it was the mental illness that affected her attitude toward them. Unfortunately, even though the children are now mature, the estrangement continues. Two sons will not even talk with her, one daughter lives in Florida, and the other, recently divorced, has two children of her own.

The defendant testified that his wife's bizarre behavior was one of the reasons that caused him to leave his position with the computer company. His acquiescence in her spending sprees, which he permitted to placate her, resulted in his impoverishment and subsequent obtaining of credit by using false social security numbers. He has had three far less demanding jobs since leaving the computer company, none lasting more than 11 months.

The defendant has now taken early social security retirement and works part time at a neighborhood convenience store. He describes his wife's daily activities as watching television for 15 or 20 minutes at a time and then going to bed. He said this occurs about 15 or 20 times a day and he sees to it that she takes her medication. He stated that they do babysit their grandchildren on occasion, but that he cannot permit his wife to be alone with them.

The district judge "reluctantly" denied the motion for downward departure stating that the care of a family member is a common circumstance and that Guidelines sentences frequently impose hardship upon family members. He concluded that "the situation is so common that I cannot say that that impact no matter how severe was not within the contemplation of those who prepared and wrote the Guidelines."

Defendant appealed to this Court and, after oral argument, the panel concluded that the district court had acted under a misapprehension of the standards for departure under the Guidelines. Because the defendant was serving the sentence of incarceration, the panel admitted him to bail pending resentencing.[1]

■ Although the decision to depart downward rests within the discretion of the sentencing judge and is not reviewable by an appellate court, we do have jurisdiction over an appeal when a district court refuses to depart downward because it believes it lacks authority to do so. *United States v. Higgins*, 967 F.2d 841, 844 (3d Cir.1992); 18 U.S.C. § 3742(a)(2).

18 U.S.C. § 3553(b) provides that a sentencing court may depart from the ranges established by the Sentencing Guidelines when the judge finds "an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." As part of its general instructions to the Commission, Congress indicated that the Guidelines and policy statements in recommending a term of imprisonment, or its length, should reflect the general inappropriateness of considering certain personal characteristics, including family ties and responsibilities. 28 U.S.C. § 994(e). In response, the Commission promulgated a policy statement that reads in part: "Family ties and responsibilities and community ties are not ordinarily relevant in determining whether a sentence

---

1. The district court had granted the defendant a delay in beginning his jail term to permit him to make arrangements for the care of his wife. We do not know what success the defendant may have had in this respect, but at argument defense counsel advised that Mrs. Gaskill was living alone, did not leave the house, had not seen her doctor since the defendant entered prison, and was subsisting on food left by her daughter at the house once a week.

should be outside the applicable guideline range." U.S.S.G. § 5H1.6, p.s.

We note in passing that section 5H1.6 is not a Guideline, but a policy statement. Unlike the Guidelines, policy statements are not subject to formal legislative review and do not have the same degree of authority as Guidelines. *See United States v. Merritt*, 988 F.2d 1298 (2d Cir. 1993); *United States v. Johnson*, 964 F.2d 124, 127–28 (2d Cir.1992); *see also* Daniel J. Freed, *Federal Sentencing in the Wake of Guidelines: Unacceptable Limits on the Discretion of Sentencers*, 101 Yale L.J. 1681, 1695 (1992). However, in *Williams v. United States*, — U.S. —, —, 112 S.Ct. 1112, 1119, 117 L.Ed.2d 341 (1992), the Court said that where "a policy statement prohibits a district court from taking a specified action, the statement is an authoritative guide to the meaning of the applicable guideline."

In this case, we have not only a policy statement, but an expression of congressional concern in 28 U.S.C. § 994(e) that gives the policy statement added legitimacy. Nevertheless, it is important to maintain the distinction between the rigidity of the Guidelines and the more or less hortatory nature of policy statements. That said, however, it is significant that the statute only indicates "the general inappropriateness" of considering family ties and responsibilities. Similarly, the policy statement says such a consideration is "not ordinarily relevant." Thus, we do not have a clear prohibition, but rather an indication that exceptions should be invoked only where the circumstances are not "ordinary" or "generally" present.

In other words, "many defendants shoulder responsibilities to their families, their employers, and their communities. Disruptions of the defendant's life, and the concomitant difficulties for those who depend on the defendant, are inherent in the punishment of incarceration." *Johnson*, 964 F.2d at 128. Disintegration of family life in most cases is not enough to warrant departures.

However, the length of imprisonment mandated by the Guidelines and the nature of the offense are also circumstances that should be factored into the equation. For example, in *United States v. Headley*, 923 F.2d 1079 (3d Cir.1991), the defendant had five children who had been fathered by the leader of a drug organization to which the defendant belonged. The lower end of the applicable Guideline range was 17–½ years. Thus, inevitably the children were destined to be consigned to foster care even if the sentence were substantially reduced. In addition, there would be some question whether the best interests of the children would be served by allowing them to remain under the care of the defendant who had exposed them to the atmosphere of large scale drug dealings. In that case, family ties were not an appropriate basis for a downward departure. *Id.* at 1082–83.

In our opinions, we have concluded that section 5H1.6 does not prohibit departures, but restricts them to cases where the circumstances are extraordinary. *See Higgins*, 967 F.2d at 845; *Headley*, 923 F.2d at 1082. Other Courts of Appeals are in accord. *See, e.g., Johnson*, 964 F.2d at 129–30; *United States v. Deigert*, 916 F.2d 916, 919 (4th Cir.1990); *United States v. Big Crow*, 898 F.2d 1326, 1331 (8th Cir.1990); *United States v. Pena*, 930 F.2d 1486, 1494 (10th Cir.1991). *But see United States v. Thomas*, 930 F.2d 526, 529–30 (7th Cir. 1991).

The circumstances here are in sharp contrast to the cases where departure has been found to be unwarranted. There has been no indication that the defendant has a violent nature nor is the offense with which the defendant is charged classified as a violent crime. Thus, the concerns to protect the public from violence or serious transgressions such as large scale drug dealings are not present in this case.

The minimum sentence is eight months imprisonment, which is at the extreme lower end of the Guideline that requires imprisonment. As distinct from *Headley*, a slight downward departure here could re-

sult in a noncustodial sentence and effectively preserve the family unit.

It is important, too, to realize that departures are an important part of the sentencing process because they offer the opportunity to ameliorate, at least in some aspects, the rigidity of the Guidelines themselves. District judges, therefore, need not shrink from utilizing departures when the opportunity presents itself and when circumstances require such action to bring about a fair and reasonable sentence. In *United States v. Lieberman,* 971 F.2d 989, 999 n. 10 (3d Cir.1992), we noted that "an impressive array of commentators has recently emphasized the importance of the flexibility and discretion possessed by the district courts in using their departure power to arrive at sentences that are consistent with the purposes underlying the Sentencing Reform Act." We referred to Professor Freed's discussion in the Yale Law Journal, as well as articles by Chief Judge Donald P. Lay, *Rethinking the Guidelines: A Call for Cooperation,* 101 Yale L.J. 1755 (1992), and Marvin E. Frankel, *Sentencing Guidelines: A Need for Creative Collaboration,* 101 Yale L.J. 2043 (1992).

Another member of this panel recently wrote:

> "Having concentrated for so long on hacking our way through the trees, we now need to stand back and to look at the forest. When we do, we will see that there is more room for discretion and flexibility than we first realized. To take advantage of this leeway, however, we must abjure the perception of the guidelines as a totally mechanical scheme. Instead, we must seek out the areas in which rigorous analysis of the law and careful development of the facts can make a difference. In so doing, we will serve the cause of justice."

Edward R. Becker, *Flexibility and Discretion Available to the Sentencing Judge Under the Guidelines Regime,* Fed. Probation, December 1991, at 10, 13.

In sum, we conclude that in the case before us the district court underestimated its power to depart. The record demonstrates circumstances quite out of the ordinary. The degree of care required for the defendant's wife, the lack of close supervision by any family member other than the defendant, the risk to the wife's well being, the relatively brief—in one sense—imprisonment sentence called for by the Guidelines computation, the lack of any end to be served by imprisonment other than punishment, the lack of any threat to the community—indeed, the benefit to it by allowing the defendant to care for his ailing wife—are all factors that warrant departure.

We will therefore remand for resentencing. The district court will be free to consider such alternatives to imprisonment as house confinement or probation, which will punish the defendant but will permit him to care for his wife. Of course, alternatives to imprisonment as well as departures from the Guidelines are matters within the discretion of the district court.