

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-28-1995

# USA v Evans

Precedential or Non-Precedential:

Docket 94-1546

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

Recommended Citation

"USA v Evans" (1995). *1995 Decisions.* Paper 64.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/64

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 94-1546
_____


UNITED STATES OF AMERICA

v.

FRANK JOSEPH EVANS,
                    Appellant


_____


On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal No. 92-cr-00689-5)
_____


Submitted Pursuant to Third Circuit LAR 34.1(a)
November 3, 1994

Before:  GREENBERG, SCIRICA and LEWIS, <u>Circuit</u> <u>Judges</u>

(Filed:  February 28, l995 )


                    L. FELIPE RESTREPO, ESQUIRE
                    Krasner & Restrepo
                    924 Cherry Street, 2nd Floor
                    Philadelphia, Pennsylvania 19107

                    Attorney for Appellant


                    FRANCIS C. BARBIERI, JR., ESQUIRE
                    Office of the United States Attorney
                    615 Chestnut Street
                    Philadelphia, Pennsylvania 19106

                    Attorney for Appellee

---

OPINION OF THE COURT

---

SCIRICA, <u>Circuit</u> <u>Judge</u>.

Frank Joseph Evans and nine other defendants were charged in a 25-count indictment with conspiracy and drug trafficking offenses. On April 21, 1993, Evans pled guilty to conspiracy to distribute more than five kilograms of cocaine (21 U.S.C. § 846 (1988)) and criminal forfeiture (21 U.S.C. § 853 (a)(1)-(2) (1988)). On July 8, 1993, the defendant filed a pro se motion to withdraw his guilty plea which was denied on October 15, 1993. On May 9, 1994, the defendant was sentenced to 360 months imprisonment followed by five years supervised release. He was also ordered to pay a special assessment of $50 and a fine of $1,000. We will vacate the defendant's sentence and remand to the district court for resentencing.

I.

The defendant was arrested in Houston, Texas on July 20, 1992, while operating a motor vehicle containing 36 kilograms of cocaine in a concealed compartment. He identified himself to law enforcement officers as Frank Evans and produced a Pennsylvania driver's license which confirmed this information. On at least three subsequent court appearances, including his change of plea hearing, the defendant identified himself as Frank Evans.

The defendant's true identity was first learned when he disclosed it to a probation officer after he pled guilty but before his sentencing.  The government, through fingerprint comparison, confirmed the defendant was in fact Ronald Dawkins. Dawkins had a prior criminal record and was wanted as a parole absconder and fugitive in South Carolina.

At sentencing, the district court rejected the government's contention that the defendant obstructed justice by giving law enforcement officials a false name and denied the defendant's request for a downward departure based upon his disclosure of his true identity.  The court then sentenced the defendant to 360 months imprisonment.[1]

## II.

The district court may depart from the applicable range calculated under the United States Sentencing Guidelines where "the court finds that there exists an aggravating or mitigating

---

[1].  The presentence report determined the defendant's base offense level to be 40 because of his participation in the delivery of between 500 and 700 kilograms of cocaine.  This was supported by testimony presented by the government at the sentencing hearing.  The base level was increased by two for the defendant's role as a manager in the organization under U.S.S.G. § 3B1.1(c) and decreased by two for his acceptance of responsibility under U.S.S.G. § 3E1.1(a).  The defendant's criminal history was determined to be in category III, based on five criminal history points.  Two of these points were assigned because the offense was committed during a period of a previous criminal justice sentence, including parole, and the other three points resulted from the prior conviction itself.  Thus, the five points were added as a direct result of the defendant's disclosure of his true identity.  Absent this disclosure, the defendant would have had no criminal history points (criminal history category I), and the minimum sentence under the guidelines would have been 292 months instead of 360 months.

circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described."  18 U.S.C. § 3553(b) (1988).  According to the policy statement in U.S.S.G. § 5K2.0, circumstances that may warrant departure are generally of two kinds: factors the Commission did not adequately consider in formulating the guidelines and factors that were considered but resulted in an inadequate guideline level because of unusual circumstances substantially in excess of the ordinary.

A discretionary decision by the trial judge that a departure is not justified is not reviewable.  See United States v. Gaskill, 991 F.2d 82, 84 (3d Cir. 1993); United States v. Higgins, 967 F.2d 841, 844 (3d Cir. 1992).  But there is appellate jurisdiction where a court refuses to depart from the guidelines because it believes it lacks the authority to do so. Gaskill, 991 F.2d at 84; Higgins, 967 F.2d at 844.

In this case, the defendant maintains that except for his voluntary disclosure, his true identity would not have been ascertained.  The probation officer who prepared the presentence investigation acknowledged he would not have discovered the defendant's true identity without the disclosure:  "[A]s far as I knew he had no criminal history and I would not have looked any further from that point. . . .  [I] would never have found out who he was."

The defendant contends that his voluntary admission to the probation officer of his true identity and his prior record

are circumstances of a kind or to a degree not contemplated by the sentencing guidelines. He maintains that his sentence should be vacated and the matter remanded for resentencing because the district court erroneously believed it did not have authority to depart downward from the sentencing guideline range.

The government claims the sentencing court believed it possessed the authority under § 5K2.0 to depart if it found that circumstances warranted, but decided there was no basis for such a departure. Evidence of this belief, the government contends, is found in the court's order of May 3, 1994, stating in part, "it is hereby ORDERED that parties are notified that this Court is considering a reduction in the criminal history category -- from category III to category I -- under which Mr. Evans will be sentenced pursuant to § 5K2.0 due to the unique circumstances that surrounded Mr. Evans' presentence report interview."

It is true that a substantial portion of the sentencing hearing was devoted to a discussion of the possibility of downward departure because the defendant had volunteered information that resulted in an increase in his criminal history category. During this discussion the court stated:

> But secondly . . . am I not entitled in measuring in some way the credit that's to be given for acceptance of responsibility or for something else, entitled to take into consideration that this man volunteered all this knowledge with these consequences, not that he had a right to withhold it, but that despite the consequences he volunteered it? And I just wonder whether that is a situation which is -- was contemplated by the drafters of the guidelines.

But at the conclusion of the hearing the judge stated:

> I hold that I do not have the power to apply
> a lesser guideline or to make a downward
> departure.  I must say that I feel that . . .
> a 30-year sentence is more severe than I
> would impose were I free to find a lesser
> guideline or free to depart downward.  But I
> hold that I do not have the power.

Although the government makes a plausible argument that the court determined there was no justification for a departure, the matter is sufficiently ambiguous ("I hold that I do not have the power . . . .") to require vacating the sentence and remanding if the defendant's actions could satisfy the requirements of U.S.S.G. § 5K2.0.  Cf. United States v. Mummert, 34 F.3d 201, 205 (3d Cir. 1994) (vacating sentence and remanding to district court because "the record does not make clear whether the district court's denial of departure was based on legal or discretionary grounds").

### III.

U.S.S.G. § 5K2.0 quotes the language of 18 U.S.C. § 3553(b), permitting the sentencing court to "impose a sentence outside the range established by the applicable guideline, if the court finds 'that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.'"

To determine whether a proposed departure satisfies § 5K2.0, we must first consider whether the defendant's actions

could constitute a "mitigating circumstance." If so, then we must decide whether such circumstance is "of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." U.S.S.G. § 5K2.0 (quoting 18 U.S.C. § 3553(b)).

## A.

Since the adoption of the sentencing guidelines, courts have been wrestling with just what constitutes a mitigating circumstance that justifies downward departure. In United States v. Lieberman, 971 F.2d 989, 998-99 (3d Cir. 1992), we permitted the district court to depart downward when a prosecutor's manipulation of an indictment foreclosed the grouping of two related offenses under the guidelines, thereby resulting in a higher sentence than usual. We allowed the departure because otherwise "it would raise the prosecutor to a position supreme over the district judge vis-a-vis sentencing by virtue of the uncontrolled charging discretion." Id. at 998. In United States v. Gaskill, 991 F.2d 82 (3d Cir. 1993), we allowed a downward departure because the defendant was the sole source of care for his mentally ill wife. In so holding, we noted that "departures are an important part of the sentencing process because they offer the opportunity to ameliorate, at least in some aspects, the rigidity of the Guidelines themselves." Id. at 86. Thus, as we noted in United States v. Bierley, 922 F.2d 1061, 1067 (3d Cir. 1990), "[i]f a case is atypical, or for some other reason falls outside the scope of cases considered by the Sentencing

Commission, the Guidelines have fairly expansive language allowing for discretionary departure."

But in United States v. Newby, 11 F.3d 1143, 1148-49 (3d Cir. 1993), cert. denied, 114 S.Ct. 1841 (1994), we held that prisoners' loss of good time credits as a disciplinary sanction for assaulting prison guards could not be considered a mitigating factor in their subsequent convictions and sentences for assaulting, impeding, and interfering with those same guards. We stated that "[t]he gravamen of a mitigating circumstance is that it somehow reduces the defendant's guilt or culpability. It is a circumstance that 'in fairness and mercy, may be considered as extenuating or reducing the degree of moral culpability.'" Id. at 1148 (quoting Black's Law Dictionary 1002 (6th ed. 1990)).

The government here cites the Newby definition of "mitigating circumstance" and contends that the defendant's disclosure of his identity does not impact upon his "guilt or culpability" for the offense. But the government's reliance on Newby is misplaced. In United States v. Monaco, 23 F.3d 793 (3d Cir. 1994), the government offered a similar argument as to why the defendant's anguish at seeing his son convicted for aiding and abetting his crime could not be used as the basis for a downward departure. We rejected that contention, noting that "the Commission [did] not intend to limit the kinds of factors, whether or not mentioned elsewhere in the guidelines, that could constitute grounds for departure in an unusual case." Id. at 803 (quoting U.S.S.G. Manual 6 (1993)). We noted in Monaco that the reasons for departure in Gaskill and Lieberman had nothing to do

with the defendant's culpability.  We held, therefore, that "to the extent that Newby's pronouncement on moral culpability can be read to implicitly overrule decisions such as Gaskill and Lieberman, the Newby language must be considered dictum. Accordingly, nothing in Newby prevents a downward departure in this case."  Id. (citation and footnote omitted).[2]

We find the Monaco reasoning applicable to this case.

Furthermore, a less restrictive view of the district court's discretion to depart downward is bolstered by the Sentencing Commission's recent amendment to U.S.S.G. § 5K2.0. The amendment, which became effective on November 1, 1994, added the following language:

> An offender characteristic or other circumstance that is not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range may be relevant to this determination if such characteristic or circumstance is present to an unusual degree and distinguishes the case from the "heartland" cases covered by the guidelines in a way that is important to the statutory purposes of sentencing.

U.S.S.G. § 5K2.0 (Policy Statement)

The Sentencing Commission said this amendment provided guidance "as to when an offender characteristic or other

---

[2].  Monaco did not, however, disturb Newby's holding that the loss of good time credits did not merit downward departure.  As we noted in Monaco, "we construe Newby as focusing primarily on the fact that because criminal sentences and disciplinary sanctions are designed to serve different purposes, a departure would defeat the goals of the criminal justice system by giving incarcerated defendants lesser sentences than they deserved."  23 F.3d 793, 803 n.16 (3d Cir. 1994).

circumstance (or combination of such characteristics or circumstances) that is not ordinarily relevant to a determination of whether a sentence should be outside the applicable guideline range may be relevant to this determination."  Amendment 508, U.S.S.G. App. C.  The amendment provides that a court may use a broad range of factors in departing from the guidelines, allowing characteristics or circumstances "not ordinarily relevant" to be considered if "important to the statutory purposes of sentencing."  Therefore, we believe the defendant's disclosure of his true identity could constitute a "mitigating circumstance," within the meaning of § 5K2.0.

B.

Although we have determined that defendant's conduct potentially could constitute a "mitigating circumstance," we still must examine whether such circumstance could be "of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines."  U.S.S.G. § 5K2.0.  The defendant contends that his disclosure of his true identity constitutes a basis for departure as acceptance of responsibility substantially in excess of the norm under § 5K2.0 and our decision in United States v. Lieberman, 971 F.2d 989 (3d Cir. 1992).

In Lieberman, a bank vice president was accused by bank officials of embezzlement.  Once accused, Lieberman immediately admitted his wrongdoing, resigned his position, explained to bank managers how they could detect such wrongdoing in the future, and agreed to make restitution for more than he thought he owed.  Id.

at 991, 996.  Lieberman received an initial two-level deduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a),[3] as did the defendant here.  The district court then departed from the guidelines by granting Lieberman a one-level reduction based on his "unusual degree of acceptance of responsibility."  Id. at 992.

After a thorough review of the guidelines' treatment of "acceptance of responsibility" and the justifications for a downward departure, we stated in Lieberman that "[t]here is some indication from the Sentencing Commission that the scheme established by the Guidelines encompasses a departure for the degree of acceptance of responsibility."  Id. at 995.  We affirmed the district court on this ground, noting that "courts 'have recognized that a defendant's ameliorative post-arrest conduct may justify a departure even though section 3E1.1 rewards acceptance of responsibility'" and "that a sentencing court may depart downward when the circumstances of a case demonstrate a degree of acceptance of responsibility that is substantially in excess of that ordinarily present."  Id. at 996 (citations omitted).

The government claims, however, that defendant's conduct here does not even merit recognition as acceptance of responsibility and certainly not as acceptance "substantially in

_____

[3].  U.S.S.G. § 3E1.1(a) provides:  "If the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels."  The commentary then lists eight nonexclusive factors a court may consider in determining whether to apply § 3E1.1.

excess of that ordinarily present," as required by <u>Lieberman</u>.
<u>Id.</u>  The government contends the defense position ignores the
tenuous nature and limited scope of the defendant's acceptance of
responsibility.[4]  In fact, the government maintains that the
defendant's disclosure of his true name was nothing more than
what was required of him and, had he failed to do so, he would
have been subject to an enhancement for obstruction of justice
pursuant to U.S.S.G. § 3C1.1.  <u>Compare</u> <u>United States v. Mohammed</u>,
27 F.3d 815, 822 (2d Cir.) ("An obstruction enhancement is
warranted when a defendant provides false information [such as
his name] to the Probation Department."), <u>cert. denied</u>, 115 S.
Ct. 451 (1994), <u>with</u> <u>United States v. Alpert</u>, 28 F.3d 1104, 1107–
08 (11th Cir. 1994) (en banc) ("[A] district court applying the
enhancement because a defendant gave a false name at arrest must
explain how that conduct significantly hindered the prosecution
or investigation of the offense.").[5]

---

[4]  It is true that soon after pleading guilty the defendant
moved to withdraw his guilty plea.  When that motion was denied,
he then contested the extent of his involvement in the conspiracy
and disputed the claim that he had held a position as a
supervisor in the organization.  By accepting the probation
department's recommendation, however, the government contends the
court necessarily found that the defendant had been responsible
for the distribution of more than 500 kilograms of cocaine and
had maintained a managerial role in the conspiracy.  These are
factors for the district court to consider in determining whether
to exercise its discretion to depart downward.

[5]  We note that an Application Note to U.S.S.G. § 3E1.1 states
that "a defendant is not required to volunteer, or affirmatively
admit, relevant conduct beyond the offense of conviction in order
to obtain a reduction" under this section.

Although we do not condone the defendant's concealment of his true identity, we do not believe the district court is foreclosed from deciding that the defendant's later disclosure of his correct name might warrant downward departure. As we noted, the probation officer who prepared the presentence investigation admitted he would not have discovered the defendant's true identity without the disclosure. It would appear, therefore, that the defendant has made a colorable argument that his voluntary disclosure of identity might constitute a degree of acceptance of responsibility substantially in excess of the norm. The district court indicated at the sentencing hearing that the defendant's disclosure despite the consequences might present such a situation of extraordinary acceptance of responsibility not contemplated by the guidelines. We leave this determination to the discretion of the sentencing court.

## IV.

For the foregoing reasons, we will vacate the defendant's sentence and remand to the district court for resentencing.