**UNITED STATES of America,**

v.

**Olga Anaqui LOPEZ, Defendant.**

**No. CRIM.A. 97–611–3.**

United States District Court,
E.D. Pennsylvania.

Nov. 12, 1998.

Robert Calo, U.S. Attorney's Office, Philadelphia, PA, for Plaintiff.

Mara Meehan, Federal Defenders Association, Philadelphia, PA, for Defendant.

## MEMORANDUM & ORDER

KATZ, District Judge.

On June 16, 1998, Olga Aranque Lopez pled guilty before this court to a conspiracy to distribute heroin in violation of 21 U.S.C. § 846 and to a criminal forfeiture charge pursuant to 21 U.S.C. § 853. Under the applicable statute, Ms. Lopez faces a mandatory minimum of five years with a possible maximum penalty of forty years imprisonment. *See* 21 U.S.C. § 846; 21 U.S.C. § 841(b)(1)(B)(i). However, pursuant to the "safety valve" provisions, the court is permitted to utilize the applicable Sentencing Guidelines rather than adhering to the statutory mandatory minimum. *See* 18 U.S.C. § 3553(f)(1)-(5). As noted in a separate order, the court finds that the safety valve

provisions do apply. *See* Order of November 12. According to the stipulations of the plea agreement, this places the defendant at a base offense level of 21 with a potential Guideline range of 37 to 46 months. The issue now facing the court is the defendant's motion for a downward departure pursuant to U.S.S.G. § 5K2.0. Because the court finds that this defendant's family circumstances are extraordinary, the motion will be granted.

### Discussion

Ordinarily, a defendant must be sentenced within the ranges established in the Sentencing Guidelines unless the court finds "an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. § 3553(b). As the Supreme Court explained in *Koon v. United States*, 518 U.S. 81, 94, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996), the Sentencing Commission established guidelines to apply only to a "heartland" of typical cases: "Atypical cases were not 'adequately taken into consideration,' and factors that may make a case atypical provide potential bases for departure." *Id.* (citations omitted). Certain factors, such as the race or sex of the defendant, may never be considered as a potential basis for departure. *See* U.S.S.G. § 5H1.10. Other factors, however, while "discouraged" as "not ordinarily relevant to the determination of whether a sentence should be outside of the applicable guideline range," U.S.S.G. ch. 5, pt. H, intro. comment, may be considered in exceptional cases. *See id.; see also Koon*, 518 U.S. at 96, 116 S.Ct. 2035.

Family circumstances are one such factor that is deemed "not ordinarily relevant." U.S.S.G. § 5H1.6; *see also* 28 U.S.C. § 994(e) (discouraging consideration of family ties in most cases). However, as the Third Circuit explained most clearly in *United States v. Gaskill*, 991 F.2d 82 (3d Cir.1993), "section 5H1.6 does not prohibit departures, but restricts them to cases where the circumstances are extraordinary." *Id.* at 85; *see also United States v. Monaco*, 23 F.3d 793,

801 (3d Cir.1994) (noting same). The assessment of whether a case is exceptional and thus falls outside of the heartland is a factual determination placed within the sound discretion of the sentencing court: "Whether a given factor is present to a degree not adequately considered by the Commission, or whether a discouraged factor nonetheless justifies departure because it is present in some unusual or exceptional way, are matters determined in large part by comparison with the facts of other Guidelines cases." *Koon,* 518 U.S. at 98, 116 S.Ct. 2035. In this case, the court finds that the facts of Ms. Lopez's family circumstances take her case out of the heartland and thus warrant a downward departure.

*Facts Warranting a Departure*

■ Ms. Lopez is the mother of five children, three of whom are under the age of ten. These three younger children, Maria, Sara, and Marvin, were placed in foster care upon Ms. Lopez's arrest.[1] In most cases, the fact that children are placed in foster care upon the incarceration of one or both of their parents does not warrant a finding of extraordinary circumstances as many, perhaps even most, criminal defendants have children who often bear the brunt of their parent's wrongdoing. *See, e.g., United States v. Headley,* 923 F.2d 1079, 1082–83 (3d Cir. 1991). However, at least two aspects of Ms. Lopez's case are unique.

First, Maria, the seven-year old daughter of Ms. Lopez, was hospitalized in the Children's Unit of Horsham Clinic, a psychiatric hospital, after at least one suicide attempt following her mother's arrest. It is worth quoting from Maria's discharge diagnosis:

> This is the first psychiatric hospitalization for this 7–year–old female, recently entered into the foster care system.... Since entering the foster care system, the patient has been very tearful and agitated. She has been increasingly uncooperative within the foster care system. She has been aggressive, moody, physically threat-

ening to younger siblings. She has been threatening to injure herself and has tried to hurt herself on several occasions either by jumping out of a second floor window or attempting to take pills. She has been within the current foster care family for only three days.

Discharge Diagnosis by Dr. Daniel Hartman, Def.'s Motion Ex. A at 1. By all accounts, the child had exhibited no signs of mental illness prior to her mother's arrest. After seeing her mother over the summer,[2] Maria improved enough to leave the psychiatric clinic. Nonetheless, the court finds based upon the testimony and evidence presented that Maria's well-being has remained sufficiently low to make her circumstances extraordinary. Like other cases in which a downward departure has been granted for extraordinary family circumstances, Ms. Lopez is apparently the only caregiver who has been able to make a substantial difference in Maria's life. *See, e.g., Gaskill,* 991 F.2d at 84–84 (noting that defendant provided only realistic source of care for mentally ill wife); *cf. United States v. Abbott,* 975 F.Supp. 703, 708–09 (E.D.Pa.1997) (holding no departure warranted partly because defendant's children could be cared for by their mother).

The second factor that makes Ms. Lopez's case unique is the high risk that her parental rights will be terminated if she is sentenced to her full Guidelines' range of incarceration. Neither Ms. Lopez nor Mr. Osorno have relatives who can care for the children during their periods of incarceration. According to the representations of counsel, the child advocate appointed to represent the children in dependency court as well as the D.H.S. caseworker and her supervisor have advised counsel that if Ms. Lopez receives a lengthy sentence, they will move toward "permanency planning," which would mean petitioning the court for termination of Ms. Lopez's parental rights. The court finds that this penalty is indeed disproportionate to the crime to which Ms. Lopez has pled guilty. There is no indication that Ms. Lopez was in any way a negligent or harmful parent, and the court

---

1. The children's father, Enrique Osorno Riaza, was arrested with Ms. Lopez and was sentenced by this court to 60 months imprisonment.

2. This court earlier permitted Ms. Lopez to be released on bail in order to visit her daughter in the mental hospital.

further notes that Ms. Lopez has no prior criminal history. Her involvement in the crimes to which she pled guilty was indisputably ill-advised, but the court acknowledges the dominant role played by Mr. Osorno, her long-time partner, against whom Ms. Lopez had obtained a Protective Order only three weeks prior to her arrest. While many defendants do face the possibility of their children being forced into foster care during their incarceration, there is no indication that the Sentencing Commission considered the possibility of permanent termination of parental rights as a consequence.

Ms. Lopez's case can be easily distinguished from those in which the Third Circuit upheld a denial of a departure. In *Gaskill*, the Third Circuit suggested that when contemplating a departure based on extraordinary family circumstances, the sentencing judge should consider the value of the departure (i.e., whether the court can legitimately depart to a degree that creates a meaningful benefit), whether or not the parent is a beneficial influence, and whether or not the parent has been convicted of a crime of violence. *See Gaskill*, 991 F.2d at 85–86.

In this case, a departure of six levels as suggested by counsel would place Ms. Lopez at a Guideline range of 18 to 24 months, an amount of time that does not minimize her role in the crime but does not punish her excessively. This departure would, according to the representations of counsel, permit Ms. Lopez successfully to challenge the termination of her parental rights. Moreover, Ms. Lopez can be reunited with her children in a relatively short period of time with such a departure. Also, as noted above, the court finds Ms. Lopez's presence to be beneficial to her children, and, although she was convicted of a drug crime, she was not involved in "large scale drug dealings" such as the Third Circuit cautioned against in *Gaskill.* 991 F.2d at 85 (contrasting case of *Gaskill* defendant with that of *Headley* defendant).

The court notes in conclusion that while the government has not recommended a departure, neither has it contested the arguments made by the defendant. The government's papers state that it recognizes the court's power to depart and that it leaves the matter within the discretion of the sentencing judge. While not dispositive, this stance does reinforce the court's conviction that Ms. Lopez's case is not typical and that she does deserve a downward departure of six levels.

An appropriate order follows.

### *ORDER*

**AND NOW,** this 12th day of November, 1998, upon consideration of the Defendant's Motion for a Downward Departure based on extraordinary family circumstances, and the response thereto, it is hereby **ORDERED** that Defendant's Motion is **GRANTED.** From a base offense level of twenty one, the court departs six levels to offense level fifteen, creating a guidelines range of eighteen to twenty-four months of imprisonment.