

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-16-2002

# USA v. Dominguez

Precedential or Non-Precedential: Precedential

Docket No. 01-1855

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"USA v. Dominguez" (2002). *2002 Decisions.* Paper 397.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/397

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

        Filed July 16, 2002

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 01-1855

UNITED STATES OF AMERICA

v.

ISABEL DOMINGUEZ,
Appellant

Appeal from the United States District Court
for the District of New Jersey
(D.C. Crim. No. 99-cr-00475)

District Judge: Honorable Dickinson R. Debevoise

Argued April 18, 2002

Before: NYGAARD and AMBRO, Circuit Judges,
and O'NEILL, District Judge.*

(Filed July 16, 2002)

        George S. Leone
        Michael Martinez (Argued)
        Office of United States Attorney
        970 Broad Street
        Room 700
        Newark, NJ 07102
         Counsel for Appellee
_____

* Honorable Thomas N. O'Neill, Jr., of the United States District Court
for the Eastern District of Pennsylvania, sitting by designation.

        David S. Zapp, Esquire (Argued)
        7 East 94th Street
        New York, NY 10128
         Counsel for Appellant

OPINION OF THE COURT

NYGAARD, Circuit Judge:

I.

The sole issue in this appeal is whether the District Court
erred by concluding that it lacked discretion to grant Isabel
Dominguez a downward departure from the Sentencing
Guidelines based upon her family circumstances. Because
a District Court has the discretion to grant a downward

departure when the family circumstances lie outside the parameters of what is ordinary, when that departure would not conflict with the purposes underlying sentencing, we will vacate the sentence and remand the matter to the District Court for re-sentencing.

II.

Isabel Dominguez is an unmarried woman in her mid-forties, and the only child of Cuban immigrants. During her brief tenure as a bank branch manager, she acceded to a customer's request to open accounts under different names and to omit filing certain reports of deposits. When the customer was indicted for money laundering, Dominguez was indicted for, and convicted of, conspiring to structure financial transactions to avoid reporting requirements, in violation of 18 U.S.C. S 371. She was sentenced to thirty-seven months imprisonment and three years supervised release.

Dominguez has no criminal record, nor was there evidence that she profited in any way from her assistance to the customer. To the contrary, even the government conceded it was difficult to understand Dominguez's motivation and speculated that, because the bank

2

pressured its branch managers to bring in business and Dominguez was having trouble bringing in new accounts, she acceded to the customer's demands out of concern for her job security.1

Dominguez resided with her elderly parents, who were physically and financially dependant upon her. The record indicates that they could not afford paid assistance. Her father had undergone brain surgery and had suffered a heart attack in 1998. He is non-ambulatory, obese, incontinent, has significantly impaired mental ability, and experiences difficulty speaking. Dominguez's mother has severe arthritis and heart problems which prevented her from physically caring for her husband (e.g., she cannot lift the amount of weight necessary to assist him), and, although she is seventy-five years old, is now forced to work to support him. As the District Court found, these family circumstances were "truly tragic."2

The District Court concluded, however, that it had no choice but to sentence Dominguez to the imprisonment term fixed by the Sentencing Guidelines:

> Applying United States v. Sweeting, 213 F.3d 95 (3d Cir. 2000), I conclude that I lack discretion to grant downward departure in the circumstances of this case. If I had such discretion I'd be inclined to depart by four levels so as to reduce the period during which defendant's parents would remain without her assistance. Lacking such discretion, the [G]uideline calculations contained in the presentencing report will

be applied.

SHT at A51.

III.

As a preliminary matter, we note that we may review a
refusal to depart downward when it is based on the court's

_____

1. See Transcript at 715. See also  PSR at PP 8, 36 (noting that the bank
"placed a heavy emphasis on sales and Dominguez's reviews were based
in large part on business she acquired for the bank").

2. Sentencing Hearing Transcript ("SHT") at A50.

3

erroneous belief that it lacked discretion. See, e.g., United
States v. Gaskill, 991 F.2d 82, 84 (3d Cir. 1993) (citing
United States v. Higgins, 967 F.2d 841, 844 (3d Cir. 1992);
18 U.S.C. S 3742(a)(2). Our review of the District Court's
legal conclusion that it lacked the discretion to consider a
departure based on family circumstances is de novo. See,
e.g., Gaskill, 991 F.2d at 84-86.

IV.

A.

It is well within a District Court's discretion to grant
downward departures. Indeed, the only relief from the
Guidelines' formulaic rigidity is the ability of the sentencing
court to take into account the circumstances particular to
the case before it.3 Consequently, although the ordinary
impact of a sentence on family members will not support a
downward departure,4 where the impact is unusual or
extraordinary, the District Court has discretion.  See
Gaskill, 991 F.2d at 85 (concluding that exceptions may be
invoked "where the circumstances are not 'ordinary' or
'generally' present").5

_____

3. See Gaskill, 991 F. 2d at 86 ("[D]epartures are an important part of
the sentencing process because they offer the opportunity to ameliorate,
at least in some aspects, the rigidity of the Guidelines themselves."); cf.
Edward R. Becker, "Flexibility and Discretion Available to Sentencing
Judge Under the Guidelines Regime," Fed. Probation, Dec. 1991, at 10,
13 (directing that we "abjure the perception of the guidelines as a totally
mechanical scheme" and "seek out the areas in which rigorous analysis
of the law and careful development of the facts can make a difference"
because "[i]n so doing, we will serve the cause of justice").
4. See U.S.S.G. SS 5H1.6 (providing that "family ties and responsibilities
. . . are not ordinarily relevant in determining whether a sentence should
be outside the applicable guideline range").
5. See also Koon v. United States, 518 U.S. 81, 96 (1996) (trial court may
depart on the basis of family circumstances if they are "present to an
exceptional degree or in some other way make[ ] the case different from
the ordinary case where [family circumstances are] present"); 18 U.S.C.

S 3553(b) (departure warranted in presence of circumstances "of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the [G]uidelines"); U.S.S.G. S 5K2.0 (stating that a circumstance "not ordinarily relevant" in determining departure may be relevant if it "is present to an unusual degree and distinguishes the case from the 'heartland' of cases covered by the [G]uidelines").

Whether a particular case is appropriate for downward departure is a question of its lying "outside the heartland," that is, outside the ordinary. Thus, the term "extraordinary", as used in Sweeting, retains its literal meaning: the circumstances of the case must simply place it outside the ordinary. Sweeting, 213 F.3d at 100-01 ("The issue implicated in this case, simply stated, is whether Sweeting's family circumstances constitute 'extraordinary' family ties and responsibilities."). There is no requirement that the circumstances be extra-ordinary by any particular degree of magnitude. We therefore reject the government's apparent suggestion that a family circumstance departure requires circumstances that are not merely extraordinary, but extra-extraordinary (i.e., "truly extraordinary" or "so extraordinary"). Cf. U.S.S.G. S 5K2.0 (permitting departure only where a circumstance "distinguishes a case as sufficiently atypical to warrant" a different sentence). Ultimately, whether a circumstance is unusual enough to warrant departure is a matter committed to the sound discretion of the sentencing court. See, e.g., United States v. Sprei, 145 F.3d 528, 534 (2d Cir. 1998) (observing that District Court is in the best position to "decide what combination of circumstances take a case out of the ordinary and make it exceptional").

B.

In concluding that it lacked discretion, the District Court misapprehended our holding in Sweeting. There, we concluded that the District Court erred when it granted a 12-level downward departure for extraordinary family ties and responsibilities for a recidivist defendant who pleaded guilty to distribution and possession with an intent to distribute between 300 and 400 grams of cocaine. 213 F.3d at 96-97, 113. That conclusion does not, however, diminish the discretion granted to the District Court for downward departures when the evidence supports a finding of unusual family circumstances. To the contrary, we expressly recognize the "indispensable role of the district court in making the fact-intensive determination that is

critical to the analysis required" in "finding extraordinary family ties and responsibilities." 213 F.3d at 112.6

We reiterate our concurrence with the Second Circuit when it concluded that the scope of appellate review in this context is solely to "ensure that the circumstances relied

upon to justify a downward departure are [not] so far removed from those found exceptional in existing case law that the sentencing court may be said to be acting outside permissible limits." Sweeting, 213 F.3d at 100, quoting Sprei, 145 F.3d at 534-5. Determining what is"exceptional in existing case law" requires that the District Court compare the facts of each case with others. See Koon, 518 U.S. at 98 (explaining that whether a factor "justifies departure because it is present in some unusual or exceptional way" is a matter "determined in large part by comparison with the facts of other Guidelines cases"). Although a court of appeals may occasionally compare the facts of a case under review with those of other reported cases in assessing whether a District Court has exceeded the bounds of its discretion -- see, e.g., Sweeting, 213 F.3d at 105 -- more generally the contemplated factual comparison is for the District Court to undertake, based upon the much greater volume of Guidelines cases that come within its purview. See Koon, n.6; United States v. Collins, 122 F.3d 1297, 1302 (10th Cir. 1997) ("The Supreme Court in Koon made clear that [the] question [of when a case warrants departure] is largely for the district court to answer."). Cf. United States v. Galante, 111 F.3d 1029, 1034 (2d Cir. 1997) (observing that because well over 90 percent of Guidelines cases are not appealed, District

_____

6. See also Koon, 518 U.S. at 98 (observing that in determining whether departure is permitted, the District Court "must make a refined assessment of the many facts bearing on the outcome, informed by its vantage point and day-to-day experience in criminal sentencing" and concluding that "District [C]ourts have an institutional advantage over appellate courts in making these sorts of determinations"); Sweeting, 213 F.3d at 100 (same); Iannone, 184 F.3d at 227 ("We note the substantial deference that we owe the decision to depart from the Guidelines.").

6

Courts have institutional advantage in comparing sentencing cases and determining departure).7

In Sweeting, we held that a District Court cannot grant a downward departure based principally on generic concerns regarding breaking up families.8  In this, we are in accord with virtually all other courts of appeals. 9 We were careful to note, however, that the decision to reduce a defendant's sentence based upon family circumstances turns on the particular facts of each case. On the facts found by the District Court in Sweeting, we concluded that there was an insufficient basis for departure because the record failed to establish either that (1) the defendant's fourteen year old son was particularly disabled by his affliction with Tourette's Syndrome,10  or (2) the defendant's

_____

7. We also concur with other Court of Appeals in affirming that the Guidelines "do not require a judge to leave compassion and common sense at the door to the courtroom." United States v. Johnson, 964 F. 2d 124, 125 (2d Cir. 1992).

8. We observed that "the court was motivated primarily by the circumstance that Sweeting's incarceration would break up the family unit" and quoted the District Court's expression of its desire to avoid the "all too common" break up of the family; id. at 102 (noting that "the circumstance that Sweeting's incarceration will disrupt the family unit cannot be considered atypical"); id. at 108 ("At bottom, the unfortunate fact is that [Sweeting's] children will suffer the same type and degree of injury felt by any family where a parent is incarcerated.").

9. But see United States v. Johnson, 964 F.2d 124, 129 (2d Cir. 1992) (downward departure warranted because defendant who was solely responsible for three young children faced extraordinary parental responsibilities).

10. See Sweeting, 213 F.3d at 104 (noting that the trial court "did not make any specific factual findings regarding the severity of Sweeting's son's condition" and "did not predicate its ruling to any significant degree on the fact that her son had Tourette's Syndrome"); id. at 97-98, 107 (noting that recommended treatment involved diet, exercise and structuring of daily routine, and that son was "able to attend school and participate in various sports activities with a large measure of success"); id. at 107 ("[C]ourts considering whether to depart must weigh carefully, among other things, the severity of the condition and the degree of extra attention that it requires."); id. at 111 (contrasting Gaskill, in which "there was no real dispute that [defendant's spouse's] mental condition was serious").

7

contributions to her son's well-being were not readily replaceable.11 Thus, the presence of a dependant with special needs may not in itself be enough to justify a downward departure, and the District Court should look to the degree of those special needs and the replaceability of the defendant's contribution to meeting them.12 It is, of course, always within the discretion of the District Court to evaluate these factors in the first instance. See Supra, n. 6 discussing Koon.

_____

11. See Sweeting, 213 F.3d at 104 (noting that the trial court did not make any specific factual findings regarding "the nature of care that [defendant] provides to [her son]" and that there was nothing in the record "indicating that Sweeting was so irreplaceable that her otherwise ordinary family ties and responsibilities [were] transformed into the 'extraordinary' situation warranting a departure"); id. at 107 ("[T]here is nothing in the record suggesting that Sweeting (and only Sweeting) can provide him with the care and attention he needs, or that he as a teenager cannot take some responsibility for his own care.").

12. Compare Gaskill, 991 F.2d at 86 (noting "[t]he degree of care required for the defendant's wife" and the "lack of close supervision by any family member other than defendant" in granting departure); United States v. Alba, 933 F.2d 1117, 1122 (2d Cir. 1991) (upholding departure where defendant lived with disabled father who depended on defendant to assist him moving in and out of wheelchair); with United States v. Archuleta, 128 F.3d 1446, 1450-51 (10th Cir. 1997) (departure unwarranted where record was "scarce on the details of the care"

required by defendant's mother and "equally silent on the availability" of alternative care providers, including defendant's two siblings); United States v. Tocco, 200 F.3d 401, 435-56 (6th Cir. 2000) (remanding for specific findings regarding defendant's "personal involvement in the care of " defendant's disabled spouse and other family members and whether spouse had "alternative sources of support" where record indicated defendant had adult children living in area, one of whom was a doctor); United States v. Wright, 218 F.3d 812, 815 (7th Cir. 2000) (circumstances do not justify departure unless record establishes that "harm would be greater than the harm to a normal child [and] that care from other sources would be unable to alleviate that harm") (citations omitted). See also United States v. Haversat, 22 F.3d 790, 797-98 (8th Cir. 1994) (defendant's care was irreplaceable element of treatment for mentally ill spouse); United States v. Sclamo , 997 F.2d 970, 972-74 (1st Cir. 1993) (defendant had special relationship with child with psychological and behavioral problems).

8

C.

We have also recognized that, in determining the appropriateness of a downward departure for family circumstances, other factors should be considered by the trial court. See, e.g., Sweeting, 213 F.3d at 113 n.9 (noting that imprisonment would serve the important purposes underlying the Guidelines themselves -- "deterrence, incapacitation, just punishment and rehabilitation"), (citing 1998 U.S.S.G. ch. 1, Pt. A, intro.).13

It is appropriate -- indeed, essential -- that the District Court consider the impact of a defendant's family circumstances on the purposes underlying sentencing. 14

---

13. See also United States v. Lieberman, 971 F.2d 989, 999 n. 10 (3d Cir. 1992) (noting "the importance of the flexibility and discretion possessed by the [D]istrict [C]ourts in using their departure power to arrive at sentences that are consistent with the purposes underlying the Sentencing Reform Act").

The statement of purposes of the Sentencing Reform Act provides, in pertinent part:

>     The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider --
>
>     . . .
>
>     (2) the need for the sentence imposed --
>
>     (A) to reflect the seriousness of the offenses, to promote respect for the law, and to provide just punishment for the offense;
>
>     (B) to afford adequate deterrence to criminal conduct;
>
>     (C) to protect the public from further crimes of the defendant; and

> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . .

18 U.S.C. S 3553(a) (1994).

14. See, e.g., Daniel J. Freed & Marc Miller, "Taking "Purposes" Seriously: The Neglected Requirement of Guideline Sentencing", 3 Fed. Sent. R. 295, 295 (1991) ("Congress made one principle clear: the 'purposes of sentencing' were to play a central role in formulating

Particular family circumstances can be relevant to sentencing considerations not only because the potential harm to third-party family members may constitute a "mitigating" factor (thus permitting a downward departure as long as the traditional purposes of sentencing remain satisfied by the ultimate sentence),[15] but also because they have a direct impact on the defendant "in ways that directly implicate the purposes of sentencing."[16]

In any case, the justification for considering family circumstances in departures is that the fundamental purposes of sentencing set forth in the Sentencing Reform Act will be fully served by a reduced sentence. [17]

---

individual sentences and in drafting Commission guidelines."); see generally Douglas A. Berman, "Addressing Why: Developing Principled Rationales for Family-Based Departures", 13 Fed. Sent. R. 274 (March/April 2001); Douglas A. Berman, "Balanced and Purposeful Departures", 76 Notre Dame L. Rev. 21 (Nov. 2000) (asserting that courts must undertake a "prescriptive" as well as a"descriptive" analysis, evaluating both whether particular factors are outside the Guidelines' "heartlands" and whether those factors "should result" in a different sentence).

15. See 18 U.S.C. S 3553(b).

16. Berman, "Addressing Why", infra n.18. Compare Gaskill, 991 F.2d at 86 (factors warranting departure for credit fraud defendant with disabled spouse included "the lack of any end to be served by imprisonment other than punishment" and "the lack of any threat to the community -- indeed, the benefit to it by allowing the defendant to care of his ailing wife") with Sweeting, 213 F.3d at 111 (defendant was recidivist involved in high volume drug dealings and there was "some question whether the best interests of the children would be served by allowing them to remain under the care of the defendant").

As Berman notes by way of illustration, in some circumstances a defendant's non-violent crime may be motivated by family need and her behavior is therefore less culpable; in others, the realization of harm to the family owing to defendant's criminal conduct may provide a significant deterrent from further wrongdoing, lessening the need for imprisonment to provide deterrence. Berman, "Balanced and Purposeful Departures", 76 Notre Dame L. Rev. at 67-78.

17. See id. at 66-67; cf. Gaskill, 991 F.2d at 86 (directing that departures are appropriate when "the circumstances require such action to bring about a fair and reasonable sentence").

10

Accordingly, we reiterate our direction that factors such as the need for deterrence, incapacitation, just punishment, and rehabilitation should play a significant role in the District Court's analysis.[18]

D.

Finally, we note again, it is for the District Court in the first instance to exercise its discretion in deciding upon a downward departure. The District Court here indicated that it was "inclined to depart by four levels" but felt that it lacked discretion to do so. Having now clarified our jurisprudence, we observe that in this case such a downward departure would be within the District Court's discretion given its findings regarding Dominguez's extraordinary family needs and the absence of any other readily available source of meeting those needs. [19] Dominguez has been terminated from her banking position

_____

18. Cf. Berman, "Balanced and Purposeful Departures", 76 Notre Dame L. Rev. at 68 (concluding based on review of case law that, in addition to articulated analysis of "extraordinariness", family circumstances decisions also reflect "underlying concerns and judgments about culpability, crime control, and the traditional purposes of punishment embraced by the [Sentencing Reform Act]") (citing Freed & Miller, supra n. 14).

19. The District Court found that "[i]f defendant were not available to perform those functions, there would be no family member who could help and there are no funds to employ outside assistance." See SHT at 50-51. Compare Archuleta, 128 F.3d at 1450-51 (no evidence regarding inability of other two siblings to care for disabled mother), Tocco, 200 F.3d at 435-36 (defendant had adult children living in area, one of whom was a doctor); United States v. Allen, 87 F.3d 1224, 1226 n.1 (11th Cir. 1996) (noting that defendant was not "the only family member available to care for her father"); United States v. Shortt, 919 F.2d 1325, 1328 (8th Cir. 1990) (departure unwarranted where defendant's two brothers could help disabled father on farm); United States v. Pereira, 272 F.3d 76, 82 (1st Cir. 2001) (case was "replete with evidence demonstrating alternative sources of care for [defendant's] parents", including defendant's siblings); United States v. King, 280 F.3d 886, 889 (8th Cir. 2002) (record lacked findings that neither defendant's wife nor her parents, who lived next door, were able to care for defendant's children); United States v. Dyce, 91 F.3d 1462, 1467 (D.C. Cir. 1996) (noting, as factor militating against departure, that children would be cared for by defendant's family).

11

and poses no threat to society, so, incapacitation appears unjustified.[20] She has lost her employment and her reputation, and hurt and humiliated her parents, all for no

gain, and hence, her punishment will have a significant deterrent effect. Her very low level of culpability is apparent, and it would be within the District Court's discretion to conclude that a reduced sentence has a penal valence equal to the crime.[21] Finally, as Dominguez is a contrite, and educated woman with no past criminal history, and has received mental health counseling, the trial court may conclude that incarceration would serve no rehabilitative purpose.[22] In sum, the District Court would

_____

20. See Sweeting, 213 F.3d at 1111 (contrasting Sweeting and Headley with Gaskill, in which "there was no indication . . . that the defendant had a violent nature, nor was [the] offense classified as a violent crime" and where defendant had not "been engaged in a criminal business, i.e., the sale of narcotics"); id. at 111 n.8 (noting that search of Sweeting's residence found semi-automatic pistol and loaded magazines). See also United States v. Abbott, 975 F. Supp.2d 703, 710 (E.D. Pa. 1997) (distinguishing Gaskill because defendant had "a history of crimes involving actual violence, the threat of violence and the use of weapons").
21. Compare Sweeting, 213 F.3d at 113 n.9 (concluding that, as Sweeting was a recidivist "with a Criminal History Category VI despite her relatively young age," some period of incarceration was necessary "to punish Sweeting for her most recent and very serious criminal conduct").

We have previously noted that the duration of the Guideline sentence is also a factor to be considered (e.g., a very lengthy sentence that cannot be reduced to preserve the family unit intact as opposed to a term commutable to probation). See Sweeting, 213 F.3d at 111. Nonetheless, we agree with the District Court that a shorter term is, of course, less damaging to innocent dependent family members than a longer one. See SHT at A46. We reject the government argument that because any period of incarceration deprives family members of a defendant's care, any departure that includes some incarceration makes no sense in light of the policies underlying the exception for extraordinary family circumstances. We will not leave the District Courts with an "all or nothing" choice whereby they must either reduce the incarceration to zero, or decline to depart at all. Determining a just sentence depends upon an often complex interplay of multiple factors and we will not constrain the District Courts' discretion by holding that they may not depart for extraordinary family circumstances in any degree if the ultimate sentence imposed includes some incarceration.

22. Cf. Johnson, 964 F.2d at 126 (observing, in affirming departure, that there was no indication of substance abuse or mental health

12

be well within its discretion in determining that none of the purposes underlying the Guidelines would be disserved by reducing Dominguez's sentence.

V.

In sum, and for the reasons set forth above, the sentence imposed will be vacated and the matter remanded to the District Court for re-sentencing consistent with this opinion.

A True Copy:
Teste:

       Clerk of the United States Court of Appeals
       for the Third Circuit

_____

problems); United States v. Dyce, 975 F. Supp.2d 17 (D.D.C. 1997) (departure appropriate where single mother had successfully completed both drug treatment and medical assistant training program and incarceration "would not serve societal interests, or those of defendant or her children").

13