UNITED STATES of America,
Plaintiff,

v.

Yavanda NORTON, Defendant.

No. 01–CR–180.

United States District Court,
E.D. Wisconsin.

Aug. 15, 2002.

Stephen A. Ingraham, Milwaukee, WI, for Plaintiff.

Dean A. Strang, Milwaukee, WI, for Defendant.

## DECISION AND ORDER

ADELMAN, District Judge.

"The United States Sentencing Guidelines do not require a judge to leave compassion and common sense at the door to the courtroom." *United States v. Johnson,* 964 F.2d 124, 125 (2d Cir.1992). In this case, I conclude that compassion and common sense require modification of the sentence called for by the guidelines. Accordingly, I grant a downward departure based on the extraordinary family circumstances of the defendant, Yavanda Norton.

## I. FACTS

Defendant was charged in nine counts of a sixteen count superseding indictment with bank fraud, use of counterfeit access devices, use of unauthorized credit card account numbers, and possession of device-making equipment. On April 17, 2002, she pled guilty to one count of unauthorized use of credit card account numbers pursuant to a written plea agreement with the government, which called for the dismissal of the remaining counts. A pre-sentence report was prepared and, following an adjustment for role in the offense,[1] defen-

---

**1.** Based on the joint recommendation of the parties, I granted a two level reduction for role in the offense under U.S.S.G. § 3B1.2(b). Defendant's role in this offense consisted of obtaining credit card numbers from her employment at Walgreen's, which were used by her then boy-friend (and co-defendant), Teyon Abernathy, to further his bank fraud and credit card scheme. She also allowed him to store his equipment at her house for a time. Under these circumstances, I agreed that her role was fairly characterized as "minor" under the guideline. However, the two level reduction brought defendant's offense level before consideration of acceptance of responsibility below level 16. As a result, she became ineligible for the one level reduction under U.S.S.G. § 3E1.1(b). Therefore, the net gain to the defendant was only a one level reduction in offense level.

dant's offense level was determined to be 13 and her criminal history category II, producing an imprisonment range of fifteen to twenty-one months.

However, defendant asked the court to depart downward based on her extraordinary family circumstances. Defendant is a thirty-eight year old, single mother of three. She gave birth to her youngest son, Torey, on June 21, 2002. There were difficulties in delivery; the baby presented in a breech position, and when the doctors attempted to turn the baby his heart stopped, necessitating an emergency caesarian section. Torey then developed a viral infection that required hospitalization during the week of July 8, 2002. Torey's father has indicated that he has no interest in being involved in the child's life and has moved to Alabama.

Defendant also has a thirteen year old son, Corey, who resides with her and recently completed the seventh grade. Corey suffers from asthma and uses a prescribed inhaler. Corey's father contributes to his support but is not otherwise involved in his life.

Defendant's oldest child, Dwayne, is nineteen and a student at the University of Wisconsin–Milwaukee. He also resides with defendant. Defendant assists Dwayne with his tuition and expenses and also provides him with health insurance coverage. This coverage enables him to obtain treatment for severe asthma and dental work which is necessary to repair his teeth following a serious sports accident. Dwayne's father has never been part of his life.

Defendant also cares for her mother who is seventy-two and suffers from high blood pressure, gout, nervousness and other health problems. Defendant's mother does not drive and relies on defendant to drive her to doctor's appointments, the grocery store and on other errands.

Defendant has no family members who are in a position to take her children in should she be incarcerated. She is not married. Her youngest brother Gerald lives in Virginia. Her brother, Clifford, lives in Milwaukee with his wife and three children but has filed an affidavit indicating that he works only part-time, that his house has only three bedrooms, and that he is unable to assume the responsibility of caring for defendant's three children, including an infant. Defendant's brother, David, also lives in Milwaukee but is currently receiving disability compensation as the result of a serious back injury that necessitated a spinal fusion. He states that he is incapable of taking in defendant's children and may be leaving the state. Defendant's brother, Robert, is employed as a firefighter which requires him to work twenty-four to forty-eight hours straight, and, thus, is also unable to assume responsibility for defendant's children. Finally, defendant's mother is frail and not capable of caring for an infant and two teenagers. Thus, if defendant were incarcerated, it would almost certainly require that the younger children be placed in state custody. Additionally, Dwayne would likely lose his home and his health insurance.

## II. DISCUSSION

### A. Standard for Departures

In passing the Sentencing Reform Act of 1984, 18 U.S.C. § 3551 et seq., Congress "made far-reaching changes in federal sentencing." *Koon v. United States*, 518 U.S. 81, 92, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996). Congress created the United States Sentencing Commission and charged it with the task of developing sentencing guidelines for federal district courts to follow. *Id.* "A district judge must now impose on a defendant a sentence falling within the range of the appli-

cable Guideline, if the case is an ordinary one." *Id.* However, a court retains discretion to "depart from the applicable Guideline range if 'the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.'" *Id.* (quoting 18 U.S.C. § 3553(b)).

The Commission has provided guidance in making departure decisions by listing certain factors that are "forbidden" bases for departure (e.g., race, sex, national origin, creed, religion, socioeconomic status, economic hardship, lack of guidance as a youth, or drug or alcohol dependence); "encouraged" bases for departure (e.g., provocation by the victim, commission of a crime to avoid a greater harm or due to coercion or duress, or reduced mental capacity); and "discouraged" bases for departure (e.g., age, education and vocational skills, mental and emotional conditions, physical condition, employment record, community and family ties and responsibilities, and military or public service). *See id.* at 93–95, 116 S.Ct. 2035; United States Sentencing Guidelines Manual ch. 5, parts H & K. "A sentencing judge has broad discretion to depart downward when not blocked by a specific guideline." *United States v. Gee,* 226 F.3d 885, 900 (7th Cir. 2000).

A court confronted with a motion for a downward departure should first determine what factors make the case unusual, taking it out of the "heartland" of typical cases, and then whether the Commission has forbidden, encouraged, or discouraged departures based on those factors. *Koon,* 518 U.S. at 95, 116 S.Ct. 2035.

> If the special factor is a forbidden factor, the sentencing court cannot use it as a basis for departure. If the special factor is an encouraged factor, the court is authorized to depart if the applicable Guideline does not already take it into account. If the special factor is a discouraged factor, or an encouraged factor already taken into account by the applicable Guideline, the court should depart only if the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present. If a factor is unmentioned in the Guidelines, the court must, after considering the structure and theory of both relevant individual guidelines and the Guidelines taken as a whole, decide whether it is sufficient to take the case out of the Guideline's heartland.

*Id.* at 95–96, 116 S.Ct. 2035 (citations and internal quote marks omitted).

## B. Departures Based on Family Circumstances

In this case, defendant seeks a downward departure because of her family circumstances. U.S.S.G. § 5H1.6 states: "Family ties and responsibilities and community ties are not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range." Thus, family circumstances are a discouraged basis for departure.

However, the courts have long held that when a defendant's family situation is unusual or extraordinary a departure is proper. *See, e.g., United States v. Dominguez,* 296 F.3d 192 (3d Cir.2002); *United States v. Aguirre,* 214 F.3d 1122 (9th Cir.), *cert. denied,* 531 U.S. 970, 121 S.Ct. 408, 148 L.Ed.2d 315 (2000); *United States v. Canoy,* 38 F.3d 893 (7th Cir.1994); *United States v. Johnson,* 964 F.2d 124 (2d Cir. 1992); *United States v. Pena,* 930 F.2d 1486 (10th Cir.1991); *United States v. Handy,* 752 F.Supp. 561 (E.D.N.Y.1990). This determination is fact-intensive and thus commended to the district court's discretion. *See United States v. Owens,* 145 F.3d 923, 929 (7th Cir.1998).

■ "There is no requirement that the circumstances be extraordinary by any particular degree of magnitude." *Dominguez*, 296 F.3d at 195. Neither must they be "extra-extraordinary" or "truly extraordinary." *Id.* Rather, the court must simply identify facts that make this case different from the usual case.

■ However, the court should not depart based on generic concerns about breaking up a family. *See, e.g., United States v. Wright*, 218 F.3d 812, 815 (7th Cir.2000). "Imprisoning the mother of a child for even a short period of time is bound to be a wrenching experience for the child, but the guidelines do not contemplate a discount for parents of children." *United States v. Stefonek*, 179 F.3d 1030, 1038 (7th Cir.1999). Rather, it must be shown that "the period of incarceration set by the Guidelines would have an effect on the family or family members beyond the disruption to family and parental relationships that would be present in the usual case." *Canoy*, 38 F.3d at 907.

As the Seventh Circuit noted in *Canoy:*
The line between the usual and the unusual is admittedly a fine one. Then–Chief Judge Breyer observed in *Rivera* that:
It may not be unusual, for example, to find that a convicted drug offender is a single mother with family responsibilities, but, at some point, the nature and magnitude of family responsibilities (many children? with handicaps? no money? no place for children to go?) may transform the 'ordinary' case of such circumstances into a case that is not at all ordinary.

38 F.3d at 907–08 (quoting *United States v. Rivera*, 994 F.2d 942, 948 (1st Cir.1993)).

■ Three main considerations have emerged from the cases reviewing § 5H1.6 departures. First, the court should consider the specifics of the family situation: the number of dependants the defendant has, the responsibility the defendant has for them; and the role he or she plays in their lives, *see Owens*, 145 F.3d at 926; *Canoy*, 38 F.3d at 907; *Johnson*, 964 F.2d at 129; *Pena*, 930 F.2d at 1496; whether the dependents have any special needs and the defendant's role in meeting them, *Dominguez*, 296 F.3d 192, 197; *United States v. Gaskill*, 991 F.2d 82, 83–84 (3d Cir.1993); whether there are others who could replace the defendant in the dependents' lives, *Wright*, 218 F.3d at 815; *Aguirre*, 214 F.3d at 1127; *Gaskill*, 991 F.2d at 86; *Johnson*, 964 F.2d at 129; and whether the defendant's absence would force the family onto public assistance or the children into state custody, *see Owens*, 145 F.3d at 926; *see also United States v. Alba*, 933 F.2d 1117, 1122 (2d Cir.1991) (noting that the defendant worked two jobs to maintain his family's economic well-being).[2]

2. Some commentators have criticized the courts' reliance on "third party harm" in justifying departures rather than focusing on the culpability of the defendant. *See* Douglas A. Berman, *Addressing Why: Developing Rationales for Family–Based Departures*, 13 Fed. Sen. R. 274 (Mar./Apr.2001); *see also United States v. Thompson*, 74 F.Supp.2d 69, 74 (D.Mass.1999), *vacated and remanded*, 234 F.3d 74 (1st Cir.2000) (considering whether departures based on family circumstances are justified because defendants who exercise exemplary responsibility toward their families may be culpable than those who do not, or because of the exceptional impact that incarceration would have on their families). I believe that it is proper to consider both factors in determining whether to depart based on family circumstances. In fashioning an appropriate sentence, a court must consider the public interest. The public interest requires that a defendant be held accountable for her conduct. However, the public also has an interest in not having children unnecessarily placed in foster care. Such placements increase costs to taxpayers and may be more likely to cause children to become law

■ Second, a departure is more appropriate if the guideline range is low, such that a reasonable departure could keep the family unit intact. As the Seventh Circuit has noted, "a downward departure for extraordinary family circumstances cannot be justified when, even after reduction, the sentence is so long that release will come too late to promote the child's welfare." [3] *Wright,* 218 F.3d at 815–16; *see also Gaskill,* 991 F.2d at 85. Rather, such a departure is most appropriate when the defendant "could be given probation (or home confinement) rather than incarceration with only a small downward departure." *Wright,* 218 F.3d at 815; *see also Gaskill,* 991 F.2d at 85–86 ("[A] slight downward departure here could result in a noncustodial sentence and effectively preserve the family unit.").

■ Third, the court should consider the purposes of sentencing, including the need for just punishment, the need for deterrence, protection of the public, and the rehabilitation of the defendant. *Dominguez,* 296 F.3d 192, 197–98 (citing 18 U.S.C. § 3553(a)); *Pena,* 930 F.2d at 1496; *see also United States v. Pullen,* 89 F.3d 368, 370 (7th Cir.1996).[4] If the nature of the offense and the character of the defendant tend to show that no end other than punishment will be served by imprisonment, if there is no threat to the community, and if society will ultimately benefit by

allowing the defendant to care for his or her family, a departure is warranted. *Gaskill,* 991 F.2d at 86; *Pena,* 930 F.2d at 1494.

With these principles in mind, I turn to defendant's request.

## C. Defendant's Request

Defendant's extraordinary family circumstances take her case out of the heartland. First, she is solely responsible for three children, including an infant. She has been steadily and gainfully employed throughout her adult life. For the past two years she has worked for the Family House Medical Clinic; prior to that she worked for six and one-half years for Walgreen's; and before that she was employed for fourteen years by the Milwaukee Public Schools in order to support her family.

Courts have consistently granted departures under such circumstances. In *Johnson,* the court approved a downward departure to a single parent raising three young children, including an infant, as well as the young child of her institutionalized daughter, by herself. 964 F.2d at 129. In *Pena,* the court also approved a departure for the single parent of an infant and sole supporter of a sixteen year old daughter and her infant. 930 F.2d at 1494–95.[5] In *Handy,* the court granted a downward departure to a single mother of three who

---

breakers. *See generally,* John Hagan & Ronit Dinovitzer, *Collateral Consequences of Imprisonment for Children, Communities, and Prisoners,* 26 Crime & Justice 121 (1999). The court cannot ignore the culpability of the defendant. But neither should it discount society's strong interest in stable families.

3. Not all courts have found this principle to be applicable. *See, e.g., Aguirre,* 214 F.3d at 1127 (affirming four level downward departure to impose a sentence of seventy months); *Thompson,* 74 F.Supp.2d at 79 (departing from level 29 to level 25 to impose a sixty month sentence); *see also United States v.*

*Thompson,* 190 F.Supp.2d 138 (D.Mass.2002) (following remand, again departing to level 25 based on defendant's extraordinary post-arrest rehabilitation).

4. While a departure need not be consistent with all of the purposes of sentencing, *see Koon,* 518 U.S. at 108, 116 S.Ct. 2035, "consistency with one or more of those goals remains a reason in favor of a departure." *Pullen,* 89 F.3d at 370.

5. Both *Johnson* and *Pena* were cited with approval in *Canoy,* 38 F.3d at 908.

had been gainfully employed for thirteen years to support them. 752 F.Supp. at 562. Defendant's case is every bit as compelling.[6]

Indeed, her situation is more compelling than that in *Owens,* where the Seventh Circuit approved a departure for a father of three who, while very important to his children financially and emotionally, had a spouse who could care for the children during his incarceration. 145 F.3d at 926, 929; *see also Alba,* 933 F.2d at 1122 (granting downward departure for married father of two who lived with and cared for his disabled father). In the present case, in the event of defendant's incarceration, there appears to be no one available to care for her children. If she went to prison, the family would almost certainly be splintered, with the youngest children placed in state custody and Dwayne on his own with no means of support or health insurance. *See Canoy,* 38 F.3d at 907 (remanding for consideration of downward departure where district court believed family unit would suffer substantially and irreparably if defendant was incarcerated). As in *Johnson,* I am reluctant "to wreak extraordinary destruction on dependents who rely solely on the defendant for their upbringing." 964 F.2d at 129.

Defendant's children all have had health problems as does defendant's mother. The baby was recently hospitalized. Dwayne and Corey suffer from asthma. And, defendant's elderly mother depends on defendant for transportation to doctor's appointments. These factors also strongly suggest that a departure should be granted. *See Alba,* 933 F.2d at 1122 (granting downward departure where defendant had two young daughters and cared for his disabled father).

Second, defendant's guideline range is fifteen to twenty-one months. A relatively modest departure of four levels will reduce her range to six to twelve months, placing her in "Zone B," and, pursuant to U.S.S.G. § 5C1.1(c), allow a sentence of probation with a condition of community confinement or home detention in lieu of imprisonment. Such a sentence would keep defendant's family intact. *See Wright,* 218 F.3d at 815–16.

Third, the goals of sentencing will be served by a downward departure. The offense of conviction was non-violent and not drug-related. Essentially, defendant participated in a bank fraud and credit card scheme masterminded by her then-boyfriend, Teyon Abernathy, by obtaining credit card numbers while she was employed at Walgreen's. Her involvement was such that I reduced her offense level by two under U.S.S.G. 3B1.2(b) on the joint recommendation of the parties. *See Dominguez,* 296 F.3d 192, 199 (noting defendant's low level of culpability in granting departure). Thus, such a sentence will not unduly depreciate the seriousness of the offense.

Neither does defendant constitute a threat to the public. The government notes that defendant has two prior convictions for financial crimes. While these convictions weigh against a departure, they are accounted for by the guidelines in establishing her criminal history category. Moreover, a sentence of five years probation will ensure that defendant is closely monitored for a substantial period of time.

The victims of the offense will also be served by a sentence of probation. Defendant owes a substantial amount of restitution, which she will more easily be able to

---

**6.** As Judge Gertner notes, in considering such requests, the district courts "create a common law of sentencing defining the boundaries of typicality and atypicality." *Thomp-* *son,* 190 F.Supp.2d at 144. In comparing Yavanda Norton to those defendants previously found worthy of a departure, I conclude that her situation is also extraordinary.

pay while on probation rather than in prison.

Finally, the public interest will be best served by not breaking up defendant's family. Society has an interest in maintaining stable family units, which are more likely to produce productive, law abiding citizens.

 For these reasons, I will grant defendant a four level downward departure. Defendant's adjusted offense level is nine, her criminal history category II, and her imprisonment range six to twelve months. Pursuant to U.S.S.G. § 5C1.1(c), I sentence defendant to five years of probation, with the condition that she serve six months of home confinement.[7] This period of probation is two years longer than I could have imposed as supervised release following incarceration. The additional period of supervision will, for the reasons stated, serve both the victims and the public.

The extent of this departure is reasonable in light of the factors to be considered at sentencing. *See* 18 U.S.C. § 3742(e)(3). There are no "hard and fast rules" governing the extent of a departure, *United States v. Cruz–Guevara*, 209 F.3d 644, 647–48 (7th Cir.2000); rather, the "law merely requires that district judges link the degree of departure to the structure of the Guidelines and justify the extent of the departure taken." *United States v. Scott*, 145 F.3d 878, 886 (7th Cir.1998). In other words, the reasons provided must justify the extent of the departure.

A departure of four levels will well-serve the goals of sentencing contained in 18 U.S.C. § 3553. Defendant will be punished and deterred from future misconduct; she will also be better able to make restitution. *See Pena*, 930 F.2d at 1495–96. The extent of the departure is also

consistent the reasons for it; a departure to Zone B will allow a sentence that maintains defendant's family unit. *See Wright*, 218 F.3d at 815. I therefore conclude that a four level departure is reasonable in light of the structure and purpose of the guidelines and the goals of sentencing. *See Dominguez*, 296 F.3d 192, 199 (suggesting that a four level departure would be reasonable).

### III. CONCLUSION

**THEREFORE, IT IS HEREBY ORDERED THAT** defendant's request for a downward departure is **GRANTED**.

---

7. Other conditions are set forth in the judgment.