**UNITED STATES of America,**
**Plaintiff,**

v.

**Kevin KAQUATOSH, Defendant.**

**No. 02–CR–151.**

United States District Court,
E.D. Wisconsin.

March 14, 2003.

Joy Bertrand, for Plaintiff or Petitioner.

Dean Strang, for Defendant or Respondent.

## *DECISION*

ADELMAN, District Judge.

Defendant Kevin Kaquatosh, a Native American, was charged with two counts of assault with intent to kill on the Menominee Indian Reservation, and one count of forcibly assaulting or resisting an officer of the Menominee Tribal Police. On March 10, 2003, he entered pleas of guilty to two amended charges of assault causing serious bodily injury, and sentencing was set for June 10.

For approximately six months prior to entering his guilty plea, defendant had been released on his own recognizance with the condition that he reside at a community correctional center. When defendant entered his plea, the government requested that he be remanded into custody. After hearing the arguments of counsel, I concluded that detaining defendant pending sentencing would not be appropriate. In this decision, I explain why.

## I.

The general rule concerning release pending sentencing is set forth at 18

U.S.C. § 3143(a)(1). That statute provides:

> the judicial officer shall order that a person who has been found guilty of an offense and who is awaiting imposition or execution of sentence, other than a person for whom the applicable guideline promulgated pursuant to 28 U.S.C. 994 does not recommend a term of imprisonment, be detained, unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released . . .

However, § 3143(a)(2) provides that defendants convicted of crimes of violence, offenses carrying a maximum sentence of life imprisonment or death, or drug crimes with a maximum term of ten years or more *must* be detained unless (1) the court finds that there is substantial likelihood that a motion for acquittal or a new trial will be granted, *or* the government recommends that no sentence of imprisonment be imposed; *and* (2) the court finds by clear and convincing evidence that the defendant is not likely to flee or pose a danger. Defendant was found guilty of a crime of violence, no motion for acquittal or a new trial (or withdrawal of his plea) had been filed, and the government stated that it would recommend (and the guidelines apparently require) that defendant go to prison. Therefore, defendant was subject to detention under § 3143(a)(2).

But a person subject to detention under § 3143(a)(2) may nevertheless be released if (1) he meets the conditions set forth in § 3143(a)(1), in other words, if he shows by clear and convincing evidence that he is not likely to flee or pose a danger to the safety of any other person or the community if released; *and* (2) "it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate." 18 U.S.C. § 3145(c).[1] Be-

---

**1.** Section 3145(c) is located in a statute enti-  tled, "Review and appeal of a release or de-

cause defendant had been released on his own recognizance for six months prior to pleading guilty and had complied with the conditions of pre-trial release, and because I found that his release posed no danger, I concluded that he met the conditions of § 3143(a)(1). That left the question of whether there were "exceptional reasons" why it was not appropriate to detain him.

■ The statute does not define "exceptional reasons." The legislative history also provides little assistance.[2] *United States v. DiSomma*, 951 F.2d 494, 497 (2d Cir.1991). "Consequently, courts have been left to flesh out a definition, and the term has generally come to mean that which is 'unique,' 'uncommon,' 'rare,' or 'out of the ordinary.'" *United States v. Vallie*, No. C4–01–03, 2001 U.S. Dist. LEXIS 4713, at *13 (D.N.D. Apr.12, 2001); *see also DiSomma*, 951 F.2d at 497 (defining the term as a "unique combination of circumstances giving rise to situations that are out of the ordinary"). What constitutes "exceptional reasons" must be determined on a case-by-case basis. *Vallie*, 2001 U.S. Dist. LEXIS 4713, at *13 (citing *DiSomma*, 951 F.2d at 497).

District courts considering requests under § 3145(c) have often rejected applications for release based on "purely personal" circumstances, such as hardship to the defendant's family or employer, on the theory that such hardships are typical consequences of incarceration. *United States v.*

*Lippold*, 175 F.Supp.2d 537, 540 (S.D.N.Y. 2001) (collecting cases, and denying defendant's request based on his relationship with his young children, one of whom was disabled, and his importance to his employer); *Burnett*, 76 F.Supp.2d at 849–50 (collecting cases, and denying defendant's request based on his "personal family situation"); *United States v. Scott*, No. 95–CR–80, 1995 U.S. Dist. LEXIS 17820, at *5 n. 6 (E.D.Tex. Nov. 22, 1995), *aff'd*, 95 F.3d 1148 (5th Cir.1996) (table) (collecting cases, and denying request based on defendant's infirm parents' need for assistance from defendant); *United States v. Bryant*, 873 F.Supp. 660, 663 (N.D.Ga. 1994) (collecting cases, and denying request based on defendant's desire to spend time with family, including young son, prior to incarceration); *United States v. Mahabir*, 858 F.Supp. 504, 508 (D.Md.1994) (collecting cases where "[c]ourts have found that such purely personal considerations do not constitute exceptional reasons within the meaning of Section 3145(c)"); *see also Vallie*, 2001 U.S. Dist. LEXIS 4713, at *14–15 (denying release based on facts that defendant was not a flight risk, cared for disabled siblings, and performed well on pretrial release); *United States v. Dempsey*, No. 91–098, 1991 WL 255382, 1991 U.S. Dist. LEXIS 16876, at *5–6 (E.D.La. Nov. 19, 1991) (denying request based on defendant's poor health, history of mental problems, and ignorance

tention order." Despite its location in a section concerning appeals, "[e]very circuit to have considered the subject had decided that § 3145(c) is available to district courts." *United States v. Burnett*, 76 F.Supp.2d 846, 848 (E.D.Tenn.1999) (citing *United States v. Herrera–Soto*, 961 F.2d 645, 647 (7th Cir. 1992) and other cases). The provision applies not only to release prior to sentencing, but also to release after sentencing and pending appeal. *See generally* Jonathan S. Rosen, *Federal Mandatory Detention Act: An Overview of the "Exceptional Reasons" Provision,*

19 Champion 19 (1995). In this decision, I am concerned only with release after a finding of guilt but before sentencing.

2. "The legislative history on the issue is sparse and uninformative. The only useful historical document is à letter from the Justice Department to Senator Paul Simon, the sponsor of the Mandatory Detention for Offenders Convicted of Serious Crimes Act, proposing the 'exceptional reasons' provision and suggesting two hypothetical situations where it might apply." *DiSomma*, 951 F.2d at 497.

of possibility that he would be detained following jury verdict).

Courts granting release have often relied upon a combination of personal factors (e.g., employment, ties to the community, performance on pre-trial release, medical conditions), and legal factors (e.g., the potential length of the sentence and the possibility of a downward departure at sentencing). *See Lippold*, 175 F.Supp.2d at 540–41 (collecting cases); *United States v. Carretero*, No. 98–CR–418, 1999 WL 1034508, 1999 U.S. Dist. LEXIS 17623, at *21–22 (N.D.N.Y. Nov.4, 1999) (collecting cases).

For example, in *United States v. Charger*, 918 F.Supp. 301 (D.S.D.1996), the court allowed a Native American defendant convicted of assault to be released pending sentencing under § 3145(c). The court noted that there may be grounds for a downward departure at sentencing and found that the defendant was in need of the guidance and support that his father would provide; that he was being released to his father, who would provide a structured home where no drinking or smoking was permitted; and that the defendant was engaged in outpatient alcohol treatment. *Id.* at 303–04.

In *United States v. Cantrell*, 888 F.Supp. 1055, 1057–58 (D.Nev.1995), the court allowed the release of a Native American defendant convicted of assault with a dangerous weapon where (1) the defendant had already been prosecuted for the offense by the tribe and was being supervised by the tribal court; (2) he was participating in substance abuse counseling, which the court found would benefit him more than incarceration; (3) pre-trial incarceration would affect the defendant's eligibility for the boot camp program; and (4) the offense of conviction involved an assault on a family member, which the court found was unlikely to be repeated.

## II.

Section 3145(c) was intended to provide "an avenue of relief from the mandatory detention provisions" of the Bail Reform Act. *Herrera–Soto*, 961 F.2d at 647. It provides district courts considerable discretion. The statute does not require that both "legal" and "factual" grounds exist before release may be ordered. Nor does it preclude releasing a defendant based on "purely personal circumstances," as many of the cases have held. The statute requires only that the court find that the defendant's situation is sufficiently unique to make detention pending sentencing inappropriate. A court may make such a finding based on "legal" reasons, "factual" reasons, or some combination of both.

One example of a legal reason would be a situation where the defendant had a viable downward departure motion or other sentencing argument that would reduce his prison exposure and make months of detention prior to sentencing inappropriate. But even if the defendant is bound to be sent to prison (even for a substantial period of time), the unique factual circumstances of his case could make immediate detention inappropriate. There must only be some special reason or need for the defendant to be free on bond during the period of time between the finding of guilt and sentencing.

There is no reason why family circumstances cannot provide a factual basis for release pending sentencing. As noted, most courts have rejected family circumstances as a basis for release, theorizing that incarceration always causes family hardship, and that defendants with families should not receive better treatment than those who do not. *E.g., United States v. Clark*, No. 02–CR–10104, , 2003 WL 60478, 2003 U.S. Dist. LEXIS 136, at *5 n. 3 (W.D.Va. Jan. 7, 2003) (citing *Bur-*

*nett,* 76 F.Supp.2d at 850). But courts have long approved of downward departures from the sentencing guidelines based on extraordinary family circumstances. *E.g., United States v. Norton,* 218 F.Supp.2d 1014, 1018 (E.D.Wis.2002) (collecting cases).[3] There is no reason why the lesser relief of pre-sentence release should not also be available to qualified defendants based on family circumstances. Congress did not intend that all violent offenders would always be detained, but rather that where appropriate, courts could determine that the hardship of detention was not required.[4]

One can think of many unusual circumstances that might justify release between plea and sentence as, for example, where a defendant's parent or spouse was seriously ill and may die prior to sentencing; or a defendant's child was scheduled for surgery during this time; or where a defendant's family was facing a particularly difficult financial situation that could be ameliorated if the defendant remained free and employed; or where a defendant's employer had a special need for his services; or where the defendant was undergoing substance abuse or psychiatric treatment that would be unavailable if he were incarcerated.

### III.

■ I determined that defendant's detention would be inappropriate for four reasons. First, defendant had done exceptionally well while on pre-trial release. He was originally placed at the Rock Valley Treatment Facility where he received treatment for substance abuse. He successfully completed the program there and was referred for outpatient treatment. The results of all recent substance abuse tests have been negative both for the presence of controlled substances and alcohol. After being released from Rock Valley, defendant was placed at Parson's House where he has also complied with the rules of the institution.

Second, while on pre-trial release, defendant obtained employment and has performed excellently in his job. In fact, defendant's employer appeared in court when defendant entered his plea and asked that defendant be released pending sentence. He stated that he had never appeared in court on behalf of a Parson's House resident, although he had employed a number of them. He indicated that he felt compelled to do so in defendant's case because defendant had been an exemplary employee, attending work when he was supposed to and performing his job conscientiously. The employer's statement contributed substantially to my conclusion that this case was out of the ordinary.

Third, defendant wanted to obtain a psychological evaluation and treatment prior to imprisonment, and the Probation Office both endorsed this request and stated that an evaluation and treatment could be promptly arranged. Defendant's request appeared to me to be based on a sober and relatively detached reflection on the cir-

---

**3.** As I noted in *Norton,* some courts and commentators have expressed reservations about reducing a sentence based on "third party harm." 218 F.Supp.2d at 1019 n. 2. However, courts have always considered the effects of the sentences they impose on others, and in view of the important societal interest in maintaining stable families, departures based on such concerns are well-supported. As with the guidelines, the Bail Reform Act does "not require a judge to leave compassion and common sense at the door to the courtroom." *United States v. Johnson,* 964 F.2d 124, 125 (2d Cir.1992)

**4.** It is important to note that in order to reach the "exceptional reasons" inquiry the court must first find, by clear and convincing evidence, that the defendant is not dangerous or a flight risk. This threshold inquiry ensures that Congress's goal of detaining dangerous criminals is not frustrated.

cumstances which had led to his facing a prison sentence and to demonstrate an interest in avoiding a similar situation in the future.

Finally, the evidence indicated that defendant's stable employment—something which had eluded him in the past—had enabled him to regularly send money home to his family on the Menominee Reservation. The payments benefitted defendant's family and evidenced some growth on defendant's part. If he was detained pending sentence, likely in a county jail, the payments would end.

Based on the above factors, I concluded that defendant was entitled to release under § 3145(c).