**UNITED STATES of America,
Plaintiff,**

v.

**Patricia PEARSON, Defendant.**

**No. 02–CR–40.**

United States District Court,
E.D. Wisconsin.

Sept. 8, 2003.

Gail J. Hoffman, Milwaukee, WI, for Plaintiff.

Brian P. Mullins, Milwaukee, WI, for Defendant.

### DECISION AND ORDER

ADELMAN, District Judge.

Defendant Patricia Pearson was employed as the office manager at Dynamic Credit Union in Kenosha, Wisconsin. From October 1999 to February 2001 she used her position steal $39,480 from her employer. Her method was not sophisticated; she simply took money from the vault and teller drawer.

Defendant was caught and pled guilty to one count of bank larceny under 18 U.S.C. § 2113(b). The pre-sentence report calculates defendant's offense level as 12 and her criminal history category as I, producing an imprisonment range of 10–16 months under the sentencing guidelines. Under these calculations, defendant falls in "Zone C" of the sentencing grid, meaning that she has to serve at least half of the minimum term of imprisonment in a penal institution. *See* U.S.S.G. § 5C1.1(d).

The parties agree on the applicable guidelines, but defendant moves for a downward departure based on her extraordinary family circumstances. In this decision I address her motion.[1]

### I. GENERAL DEPARTURE STANDARD

A court may depart from the applicable guideline range if it " 'finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.' " *Koon v.*

*United States,* 518 U.S. 81, 92, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996) (quoting 18 U.S.C. § 3553(b)).

The Commission has provided guidance in making departure decisions by listing certain factors that are "forbidden" bases for departure, "encouraged" bases for departure, and "discouraged" bases for departure. A court confronted with a motion for a downward departure should first determine what factors make the case unusual, taking it out of the "heartland" of typical cases, and then whether the Commission has forbidden, encouraged, or discouraged departures based on those factors. *Id.* at 95, 116 S.Ct. 2035.

> If the special factor is a forbidden factor, the sentencing court cannot use it as a basis for departure. If the special factor is an encouraged factor, the court is authorized to depart if the applicable Guideline does not already take it into account. If the special factor is a discouraged factor, or an encouraged factor already taken into account by the applicable Guideline, the court should depart only if the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present. If a factor is unmentioned in the Guidelines, the court must, after considering the structure and theory of both relevant individual guidelines and the Guidelines taken as a whole, decide whether it is sufficient to take the case out of the Guideline's heartland.

*Id.* at 95–96, 116 S.Ct. 2035 (internal citations and quote marks omitted).

### II. DEPARTURES BASED ON FAMILY CIRCUMSTANCES

Defendant seeks a departure based on her family situation. U.S.S.G. § 5H1.6

---

[1] I previously sentenced petitioner in October of 2002. However, I vacated that judgment under 28 U.S.C. § 2255 based on a violation of her due process rights at sentencing. *Pearson v. United States,* 265 F.Supp.2d 973 (E.D.Wis.2003).

states that "family ties and responsibilities and community ties are not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range." Thus, family circumstances are a discouraged basis for departure, and the court may depart only if the family situation is unusual or extraordinary. *See, e.g., United States v. Canoy*, 38 F.3d 893, 906 (7th Cir.1994).

■ There are three main considerations for a court confronted with a motion based on family circumstances. *United States v. Norton*, 218 F.Supp.2d 1014, 1018 (E.D.Wis.2002).

First, the court must consider the specifics of the defendant's family situation—how many dependants does she have; what is her role in their lives; do they have special needs or disabilities; are there others available to fill the void should the defendant go to prison. *Id.* at 1019.

Second, the court should consider whether the guideline range is such that a reasonable departure will spare the defendant's family from unnecessary hardship. A departure cannot be justified when, even with the reduction, the sentence is so long that the defendant's release will come too late to assist the family. *Id.* at 1020.

Third, the court should consider the purposes of sentencing—the need for just punishment, protection of the public, deterrence, and rehabilitation of the defendant. *Id.* "If the nature of the offense and the character of the defendant tend to show that no end other than punishment will be served by imprisonment, if there is no threat to the community, and if society will ultimately benefit by allowing the defendant to care for his or her family, a departure is warranted." *Id.* (citing *United States v. Gaskill*, 991 F.2d 82, 86 (3d Cir.1993); *United States v. Pena*, 930 F.2d 1486, 1494 (10th Cir.1991)).

## III.  APPLICATION OF STANDARD

### A.  Defendant's Family Situation

■ Defendant resides with and is caretaker for her infirm parents. Her father, Michael, is 63 years old and suffers from diabetes and kidney failure. He is currently awaiting a kidney transplant and is essentially bed-ridden. He is required to visit his doctor for dialysis three times per week.

Defendant's mother, Rita, is 59 and suffers from diabetes, kidney problems, Crohn's disease, lymphodema in her leg, and has a history of strokes. She is currently confined to a wheel chair due to a heel infection, which is a complication of her diabetes.

Defendant is responsible for her parents' care. She cooks for them, shops for them, drives them to the doctor, administers medication, and manages the household. Defendant has three siblings, but none could step in for her should she be sent to prison. Her sister, Christine, is herself disabled and does not drive. Her brother Mark lives in Madison and works full-time; he could not provide the type of care defendant's parents, who reside in Kenosha (hours away), require. Her brother Michael lives in Racine (fairly close by) but his work takes him out of state two weeks per month. In sum, defendant's absence would require the retention of an outside, paid care-giver, something her parents may not be able to afford on fixed incomes. Such care may ultimately come at public expense.

### B.  Defendant's Guideline Range

Defendant's offense level is 12, which, coupled with her criminal history category of I, produces an imprisonment range of 10–16 month. A small departure of two levels would place defendant in "Zone B" of the sentencing grid, allowing a sentence

where defendant remains in the community. *See* U.S.S.G. § 5C1.1(c). As the court stated in *United States v. Wright*, 218 F.3d 812, 815 (7th Cir.2000), a departure is most appropriate when the defendant "could be given probation (or home confinement) rather than incarceration with only a small downward departure."

## C. Purposes of Sentencing

Finally, defendant is a non-violent offender and her offense did not involve illegal drugs. Her only prior record is more than a decade old and she has no criminal history points under the guidelines. She is not a threat to the community, and given her minimal prior experience with the criminal justice system a sentence of strict supervision and home confinement will provide just punishment and deter her from future misconduct. It appears that defendant's conduct was related to a gambling problem, and as part of a supervisory sentence in the community she can be required to address that problem. Such a sentence will also allow her to continue working, better enabling her to pay the substantial restitution she will owe to the victim in this case. Thus, the victim will benefit as well as defendant's parents. Finally, defendant has shown extreme remorse for her conduct.

## D. Comparable Cases

In *United States v. Dominguez*, 296 F.3d 192 (3d Cir.2002), the court found that a departure would be appropriate based on very similar facts. The defendant there was a bank branch manager, with no prior record, who lost her job as a result of her conviction for engaging in improper financial transactions. *Id.* at 194. She also cared for her elderly and infirm parents, who were physically and financially dependent upon her. *Id.* Because the defendant's parents would suffer greatly if she were imprisoned and the nature of the offense and her background suggested that she was not a threat to the community, the court found that a departure would be well within the district judge's discretion.[2] *Id.* at 199–200; *see also United States v. Alba*, 933 F.2d 1117, 1122 (2d Cir.1991) (approving a departure to a defendant who cared for his disabled father and paternal grandmother). These cases suggest that petitioner's case also falls outside the heartland.

## E. The Government's Position

The government opposes the motion. It first notes that this is a disfavored basis for departure and that it is expected that families will suffer when a member is incarcerated. *See United States v. Jaderany*, 221 F.3d 989, 996 (7th Cir.2000); *United States v. Stefonek*, 179 F.3d 1030, 1038 (7th Cir.1999).

This is true; but the Seventh Circuit has acknowledged that at some point, the ordinary disruption in family life becomes extraordinary. The *Canoy* court stated:

> The line between the usual and the unusual is admittedly a fine one. Then–Chief Judge Breyer observed in *Rivera* that:
>
>> It may not be unusual, for example, to find that a convicted drug offender is a single mother with family responsibilities, but, at some point, the nature and magnitude of family responsibilities (many children? with handicaps? no money? no place for children to go?) may transform the 'ordinary' case of such circumstances into a case that is not at all ordinary.

**2.** *Dominguez* involved review of the district judge's decision that he was unable to depart, despite the "truly tragic" family circumstances at issue. The court of appeals left the ultimate decision whether to depart to the district judge, but made clear that the circumstances of the case would support such an exercise of discretion.

38 F.3d at 907–908 (quoting *United States v. Rivera*, 994 F.2d 942, 948 (1st Cir.1993)). For the reasons stated, I believe that point has been reached in this case.

The government also cites *United States v. Guy*, 174 F.3d 859, 860 (7th Cir.1999), but that case involved a review of a district judge's discretionary decision *not* to depart and therefore does not assist me in defining the boundaries of the heartland. Likewise, in *Jaderany* the Seventh Circuit found that, because the district court understood it could depart but chose not to, it lacked jurisdiction to second guess the district court's decision not to depart. 221 F.3d at 997.

Of the cases cited by the government, only *Stefonek* involved an actual departure, and that case is distinguishable. In *Stefonek*, the Seventh Circuit vacated a departure granted on a variety of bases, one of which was extraordinary family circumstances. The defendant was the single mother of a 12–year–old child who had learning problems. Two expert witnesses testified that the child's learning problems would be aggravated by the defendant's absence. 179 F.3d at 1038. However, there was no evidence concerning whether the harm to the defendant's child from her absence would be greater than the harm to a normal child, or what care would be available for the child while the defendant was in prison. *Id.* For example, the court did not know whether the child's father would be available to assist while the defendant was in prison, or whether professionals would be able to deal with the child's learning problems. The court concluded that "[t]hese issues require further consideration" and sent the case back for re-sentencing. *Id.* In the present case, there is no similar evidentiary gap, as the record shows that no one will be able to step in and provide the services defendant does.

The government argues to the contrary—that defendant's three siblings could provide care for their parents while defendant does her prison time. I disagree. Defendant's sister receives social security disability benefits and does not drive. Even assuming that she could, despite her infirmity, provide some of the in-home care her parents require, she could not drive them to doctor's appointments or perform the physical work required in maintaining the household. Defendant's brothers are not in a position to help; they both work full-time; one lives several hours away; and the other is out of state about half the time. Thus, I find that it would be more than simply inconvenient for defendant's siblings to help, as the government claims; it would be nearly impossible for them to replicate defendant's role.

The government also contends that it is not unusual for older parents to require a wide range of assistance from relatives or children. This is true, but does not address the present situation—a defendant who resides with and provides almost complete care to her severely ill parents.

The court in *United States v. Lacarubba*, 184 F.Supp.2d 89 (D.Mass.2002) addressed the government's arguments concerning replacement care-givers and the typicality of family obligations. In that case the court departed to allow the defendant to continue caring for his terminally ill wife. This care included providing injections in her groin, which she could not do herself. The defendant lived far away from his adult children, disabling them from helping. *Id.* at 97.

The government opposed the departure because the defendant was not "irreplaceable." [3] The court responded:

---

**3.** In *United States v. Pereira*, 272 F.3d 76, 81– 82 (1st Cir.2001), the court held that in order

Of course, one could say, as the government has argued, that Mr. LaCarubba could afford another caregiver to come to the home while he is in jail. Surely someone else can be trained to give Ms. LaCarubba her groin injections. Or one could say that the family could move back to the Northeast and have the daughters care for their mother. Or one could say that the daughters could move to Florida to care for their mother. Or one could say that it is entirely possible that Ms. LaCarubba could survive the defendant's 18 months' incarceration, that the progressive deterioration the doctors predict will somehow be delayed.

It is always available to the government to characterize a case at the highest level of abstraction, at that rarified point where all cases look alike, and none are atypical: The case is about dependents; everyone has dependents who are harmed by a defendant's absence. The case is about spousal obligations; everyone has obligations to their spouses that are undermined by the defendant's incarceration. The case is about sick relatives; everyone has relatives that are or may become sick during their incarceration.

But this enterprise is not about word games. I see a continuum of cases representing the adverse impact a defendant's incarceration can have on innocent dependants, from the "ordinary burdens" to "significantly" more burdens than usual. The issue is at what point on that continuum burdens are imposed on innocent dependents that

to fall outside the heartland the defendant must be "irreplaceable" to her family. The Seventh Circuit has not imposed a similar requirement, as such, although it does require a consideration of whether others can assist the defendant's family while she completes her prison stay.

are simply not justified by our legitimate need to punish the wrongdoer, that are cruel and unnecessary.

*Id.* at 98.

Thus, the court need not hypothesize other possible care-givers when the evidence discloses that none are at hand. Neither must the court reject a motion just because we "expect" third party suffering to result from following the guidelines. The court possesses the discretion to avoid wreaking extraordinary destruction on dependents who rely on the defendant for their care. *Norton,* 218 F.Supp.2d at 1021.[4]

Finally, the government argues that because defendant's guideline range is low, her parents will not suffer greatly from her brief absence while she serves her prison sentence. However, given that departures on this basis are appropriate only when the range is low, this argument would in effect prohibit all departures based on family circumstances. That is not the law of this circuit. *See Wright,* 218 F.3d at 815; *Canoy,* 38 F.3d at 906.

## IV. CONCLUSION

Because the considerations set forth in *Norton* all favor a departure, and other courts have granted departures based on similar facts, I grant defendant's motion. I find that a departure of two levels is reasonable and appropriate. The revised offense level is 10, creating an imprisonment range of 6–12 months. Defendant is now in Zone B.

4. As Judge Gertner noted in *Lacarubba,* "Even the Supreme Court has recognized that the 'consistency produced by ignoring individual differences is a false consistency.' *Eddings v. Oklahoma,* 455 U.S. 104, 112, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982). Here it would be more than false; it would be cruel."

I sentence defendant to five years of probation with the condition that she serve six months of home confinement. She must make restitution in the amount of $39,480, and she must avoid all gambling and attend Gambler's Anonymous meetings at the direction of the supervising probation officer. Other conditions appear in the judgment.

**SO ORDERED.**