**UNITED STATES of America,**
**Plaintiff,**

v.

**Inam MANASRAH, Defendant.**

No. 03–CR–46.

United States District Court,
E.D. Wisconsin.

Dec. 1, 2004.

Stephen A. Ingraham, Milwaukee, WI, for Plaintiff.

Robin Shellow, Milwaukee, WI, for Defendant.

### MEMORANDUM

ADELMAN, District Judge.

Defendant Inam Manasrah pleaded guilty to one count of wire fraud based on her participation in a coupon redemption scheme. A probation officer prepared a pre-sentence report (PSR), which calculated defendant's offense level as 12 and her criminal history category as I, producing an imprisonment range of ten to sixteen months under the sentencing guidelines. As part of her plea agreement defendant waived her rights under *Blakely v. Washington*, —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004) and *United States v. Booker*, 375 F.3d 508 (7th Cir.), *cert. granted*, —— U.S. ——, 125 S.Ct. 11, 159 L.Ed.2d 838 (2004), and agreed to a guideline sentence as determined by the court. Neither party objected to the PSR's calculations, but defendant moved for a downward departure based on her unusual family circumstances. In this memorandum, I address the motion.

### I. BACKGROUND

Defendant immigrated to the United States from the West Bank with her hus-

band Munir in 1991. They have six children, ages two, six, nine, twelve, thirteen and sixteen. The family lives in a two bedroom apartment in New York City; the five male children share one bedroom and the two-year-old sleeps in a crib in her parents' bedroom.

Defendant's father arranged her marriage to Munir. Because she walks with a limp due to a childhood foot injury, she was considered "damaged goods," and her father "gave her away" to a man with "low fuel" (mental health problems). Munir is abusive to defendant and the children, both physically and verbally. He has hit defendant and called her stupid and ugly in front of the children, and thrown hot food at her when he was displeased with the meal she prepared. He kicks or punches the children when they misbehave and tells them they are stupid and ugly like their mother and will be nothing. He resents defendant because she did not come with a substantial dowry and resents the children because supporting them is difficult.

Defendant has not assimilated to the United States. She knows no English, wears traditional Arab clothing and believes she should be subservient to her husband. Because her husband does not participate in caring for the children, she is solely responsible for child care. Since coming to the United States, she has often been either pregnant or disabled following surgeries to correct her foot condition and thus homebound.

In 2002, one of the participants in the coupon scheme offered defendant an opportunity to earn money for her family by sitting in her home and cutting coupons from newspaper inserts delivered to her house. Others picked up the cut coupons and fraudulently redeemed them with the manufacturers through front retail operations (no merchandise was actually sold). Although the overall scheme involved millions of dollars, the parties agreed that defendant was responsible for a loss amount of only $120,000. See U.S.S.G. § 2B1.1(b). The parties also agreed that because defendant only cut coupons, knew little about the scheme and profited minimally, she was entitled to a four level mitigating role reduction under § 3B1.2(a). Nevertheless, defendant's guideline range called for her to spend at least five months in prison.[1]

When he learned of her arrest and indictment, defendant's husband was outraged. He accused her of "dishonoring" the family and vowed that if she went to prison, he would take the children to the West Bank to live with his parents and not allow her to see them. Although defendant is a legal resident alien, if she were to leave the United States to visit or retrieve her children she might not be permitted to return because of her felony conviction in the present case. Based on the above circumstances and for the purpose of keeping the family intact and in the United States, defendant asks for a two-level departure.

## II. DISCUSSION

### A. Departure Standard

■■■ Section 5H1.6 of the guidelines provides that family ties and responsibilities are not ordinarily relevant in determining whether a sentence should be outside the guideline range. U.S.S.G. § 5H1.6 (2002). Thus, this is a disfavored basis for departure, and the court may rely upon it to depart only if the defendant's situation is unusual or extraordinary.

---

1. Pursuant to U.S.S.G. § 5C1.1(d), defendant was eligible for a split sentence: five months of incarceration and five months of community confinement.

*E.g., United States v. Canoy,* 38 F.3d 893, 907 (7th Cir.1994); *United States v. Norton,* 218 F.Supp.2d 1014, 1018 (E.D.Wis. 2002). Because it is expected that children will suffer when a parent goes to prison, in order to obtain a departure on this basis a defendant must show that the harm to her children will be greater than in the typical case. *United States v. Wright,* 218 F.3d 812, 815 (7th Cir.2000); *United States v. Stefonek,* 179 F.3d 1030, 1038 (7th Cir. 1999).

[3] In determining whether to depart on this basis, a court must consider three factors. First, it must determine whether, based on the specifics of the defendant's family situation (e.g., the number of dependants, any special needs they have, the defendant's role in their lives, and the availability of others to help), the case is unusual. *See United States v. Rivera,* 994 F.2d 942, 948 (1st Cir.1993) (Breyer, J.); *Norton,* 218 F.Supp.2d at 1019 (collecting cases).

█ Second, the court must consider whether the guideline range is such that a reasonable departure would spare the defendant's family unnecessary hardship. A departure cannot be justified when, even with the reduction, the sentence is so long that the defendant's release will come too late to assist the family. *Norton,* 218 F.Supp.2d at 1020 (citing *Wright,* 218 F.3d at 815–16).

█ Third, if the situation is unusual and a reasonable departure could solve the family's problem, the court must consider whether a departure is normatively proper and consistent with the purposes of sentencing. If the nature of the offense and the character of the defendant indicate that a guideline sentence will serve no

purpose other than punishment, if the defendant is not a threat to the community and if society will ultimately benefit if the defendant is permitted to continue caring for her family, the court should grant a departure. *Id.* (citing *United States v. Gaskill,* 991 F.2d 82, 86 (3d Cir.1993); *United States v. Pena,* 930 F.2d 1486, 1494 (10th Cir.1991)).

The Commission recently amended § 5H1.6 to provide more detailed guidance to courts considering departure requests based on family circumstances. U.S.S.G. § 5H1.6 cmt. n. 1 (2003). In the present case, the parties agree that to avoid ex post facto problems I should apply the 2002 version of the guidelines.[2] Thus, I will not apply the 2003 amendment. However, because the factors set forth by the Commission in the amendment essentially track those outlined above, my decision would be the same under the 2003 version of the guidelines.

## B.   Application of Standard

█ Defendant's situation is compelling. If she is incarcerated, her six minor children will be left with an abusive father who has vowed to take them to the West Bank. If Munir carried out this threat the children, who are American citizens, would be separated from the only caretaker they have known and removed from the only country they have known. In addition, defendant might not see her children again or, if she followed them to the West Bank, she might not be able to return to the United States. Even if Munir did not take the children to the West Bank, the record shows that the children's safety would be endangered if they were left solely in his care. Munir is not capable of caring for

**2.** In 2003, the Commission increased the base offense level for defendant's offense from 6 to

7. U.S.S.G. § 2B1.1(a)(1) (2003).

them, and there is no other person who could do so. Defendant's brother, who lives in the United States, has eight children of his own and cares for his and defendant's ill mother. The woman who cared for the children when defendant was initially detained on this charge has since been implicated in the coupon scheme and is not a reliable caretaker. Defendant's other living sibling resides in the West Bank. Defendant's mother cannot take care of the children because she is ill. Thus, imprisonment would cause both defendant and her children to suffer inordinately. Their circumstances are extraordinary, far worse than those faced by a defendant-parent and her children in the usual case.

■ A two level departure would move defendant into Zone B of the sentencing grid and allow a sentence of probation with a condition of home confinement. U.S.S.G. § 5C1.1(c). Such a sentence would allow the family to remain intact.

Finally, the offense was non-violent, defendant played a minimal role in it, and she has no prior record. Other participants in the scheme used her in part because of her lack of sophistication. She poses no danger to the community. The probation officer who prepared the PSR stated that but for the guidelines her office would recommend probation. Thus, a departure is warranted.

## III. CONCLUSION

I will depart by two levels and sentence defendant to three years probation, with the condition that she be confined to her home for six months. Other conditions appear in the judgment.

As a final note, I acknowledge that while departing to avoid incarceration will benefit defendant and her children, her situation outside of prison is hardly optimal.

Possibly defendant's brother will be able to help. As a result of defendant's having been charged, he has become aware of the abusive situation in which she and her children live. He appeared at her sentencing and promises to assist her in assimilating and in locating available social services. Hopefully, he and others in a position to help defendant and her children, including the probation department, will do so.